JUSTICE BAKER
delivered the Opinion of the Court.
¶1 K.E.G. appeals a commitment order from the Montana Thirteenth Judicial District Youth Court, Yellowstone County, which ordered him to pay $78,702.09 in restitution. We reverse in part and remand with directions to the Youth Court to hold a new restitution hearing.
¶2 We restate the issue on appeal as follows: Did the Youth Court commit plain error when it concluded that K.E.G. was jointly and severally liable for the full amount of restitution for damages caused *376 by the youths, without considering K.E.G.’s ability to pay that restitution?
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Between December 22, 2011, and January 1, 2012, the Billings Police Department responded to over 200 reports of vandalism. During this eleven-day period, vandals shot the windows out of homes and vehicles with air guns, damaged vehicles with baseball bats, and set two cars on fire. An investigation led by local school resource officers indicated that K.E.G., a fifteen-year-old male, had taken part in the vandalism.
¶4 On January 10, 2012, K.E.G. and his mother met with Officer Jerry Smidt of the Billings Police Department. K.E.G. waived his rights and provided a statement to Officer Smidt. He admitted to committing acts of vandalism on December 26 and December 27, but stated he did not participate on any other date. According to an affidavit submitted by the Yellowstone County Attorney, K.E.G. admitted that he had “hit two windows with the gun” and “four or five windows with the bat” on the first night and that he had “hit five windows with the BB gun and three with the bat” on the second night.
¶5 Approximately two weeks later, the county attorney filed a petition alleging that K.E.G. was a delinquent youth for having committed criminal mischief (common scheme), a felony, in violation of §§ 45-6-101 and 45-2-101(8), MCA. Other youths involved in the vandalism similarly were charged. K.E.G. denied the State’s allegations at his initial appearance on February 9, 2012. During a change of plea hearing in late March, K.E.G. admitted to having committed criminal mischief, common scheme, as alleged in the State’s petition. The youth then detailed the acts of vandalism he committed on December 26 and December 27. The Youth Court accepted KE.G.’s admission and change of plea.
¶6 Because K.E.G. contested the State’s attempt to hold him jointly and severally liable for all damages caused during the eleven-day period of vandalism, the parties briefed the issue of restitution prior to the court’s dispositional hearing. K.E.G. argued that, since he had admitted to participating in only two of the eleven nights of vandalism, “his restitution should be jointly and severally liable for only December 26th and 27th” in the amount of $16,020.63. The State countered by asserting that the Youth Court should “impose restitution in the amount of $78,702.09” pursuant to §§ 45-6-101(4) and 45-2-101(8), MCA.
*377 ¶7 The Youth Court held a hearing on restitution and disposition on April 23, 2012. K.E.G. and the county attorney presented arguments on the proper amount of restitution. At the hearing, the Youth Court made the following comments:
With regard to restitution, the problem of course is that while you may not have been present at every act of criminal mischief, you have admitted to being responsible as part and parcel of a common scheme, and the common scheme asserted in the petition was the entire common scheme, and all of the days of this criminal mischief that went on with the various participants. And it seems to me that because of that admission, you should in fact be jointly] and severally liable with any other defendants that are-or youth that are found to be responsible for the damage caused in this matter. And I am going to order that you be responsible for that restitution in the amount of $78,702.09. Now, I understand that in five years as a youth, it will be nearly impossible, unless some-something befalls upon you financially for you to pay that.
And my hope is that you will at least make some payments with restitution to make amends for the problems that you have caused basically unsuspecting people in our community.
(Emphasis added.) The Youth Court did not inquire into the extent of K.E.G.’s assets or his prospects for future earnings.
¶8 After the hearing, the court entered a dispositional order that adjudicated K.E.G. a delinquent youth for having committed criminal mischief (common scheme), a felony, and committed him to the Department of Corrections until his eighteenth birthday, with recommended placement at Pine Hills Youth Correctional Facility. The court also ordered K.E.G. to “pay restitution in the amount of $78,702.09 ... joint and several in monthly payments of not less than $50.00 ... or 50% of his net wages whichever is greater, with the first payment due within 30 days.” The Youth Court retained jurisdiction over K.E.G. for restitution purposes until his twenty-first birthday, or until the restitution is paid in full. K.E.G. appeals from the portion of the dispositional order that ordered him to pay $78,702.09 in restitution.
STANDARD OF REVIEW
¶9 The court’s determination of the appropriate measure of restitution is a question of law, reviewed for correctness. State v. *378 Johnson, 2011 MT 116, ¶ 13, 360 Mont. 443, 254 P.3d 578 (citing State v. Pritchett, 2000 MT 261, ¶ 18, 302 Mont. 1, 11 P.3d 539).
DISCUSSION
¶10 Did the Youth Court commit plain error when it concluded that K.E. G. was jointly and severally liable for the full amount of restitution for damages caused by the youths, without considering KE.G.’s ability to pay that restitution?
¶11 K.E.G. argues that he should be responsible to pay restitution for the amount of damage that was caused only on the nights during which he participated in the vandalism and that the joint and several liability for restitution imposed under the criminal mischief statute should not be applied to youthful offenders. The State argues that, pursuant to § 45-6-101(4), MCA, “the Youth Court was authorized by the Youth Court Act to aggregate the damages, and thus to order K.E.G. to pay restitution, jointly and severally, with the right of contribution, to all of the victims for all ten days of the common scheme.” The State maintains that requiring full restitution imposes accountability and contributes to the youth’s rehabilitation, arguing that it is not retributive simply because the youth will not be able to pay the full amount before the court loses jurisdiction over him. K.E.G. responds to this argument by pointing out that the Youth Court recognized it would be impossible for him to meet the restitution requirement, asserting that “[i]f Mont. Code Ann. § 45-6-101(4) is the basis for the amount of restitution owed by K.E.G., the case should be remanded for a full consideration of KE.G.’s ability to pay” $78,702.09 in restitution. K.E.G. claims that the Youth Court failed to fully consider KE.G.’s ability to pay that amount as required by § 45-6-101(2), MCA.
¶12 The Montana Youth Court Act states that restitution is to be ordered by the youth court in “appropriate cases.” Section 41-5-102(2)(c), MCA. When determining whether restitution is appropriate, the youth court may consider a number of factors, “in addition to any other evidence.” Section 41-5-1521(1), MCA. Those factors include “the age of the youth, the ability of the youth to pay, the ability of the parents or guardians to pay, the amount of damage to the victim, and legal remedies of the victim.” In the Matter of T.M.R., 2006 MT 246, ¶ 14, 334 Mont. 64, 144 P.3d 809 (citing § 41-5-1521, MCA). Once the youth court determines that restitution is appropriate, it may order the youth to pay restitution. Sections 41-5-1513(l)(a), -1512(l)(d), MCA.
*379 ¶13 In this case, the Youth Court determined that restitution was appropriate and that K.E.G. should be held jointly and severally liable pursuant to § 45-6-101(4), MCA. Although the Dissent correctly notes that “K.E.G. has not been ‘convicted’ of’ violating the statute, it errs in concluding that this statute therefore “is inapplicable.” Dissent, ¶ 40. The Youth Court Act expressly authorizes the Youth Court to order a delinquent youth to pay restitution “for damages that result from the offense for which the youth is disposed . . . .” In re T.M.R., ¶ 18 (quoting §§ 41-5-1512(1)(d), -1513(1)(a), MCA). The offense for which K.E.G. was disposed was § 45-6-101(4), MCA, which provides that “[ajmounts involved in criminal mischiefs committed pursuant to a common scheme or the same transaction, whether against the public or the same person or several persons, may be aggregated in determining pecuniary loss.”
¶14 K.E.G. admitted to committing the offense of criminal mischief pursuant to a common scheme, which is “a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense ....” Section 45-2-101(8), MCA. Because K.E.G. acknowledged that he acted as part of a common criminal plan that resulted in 200 reports of vandalism against homes and vehicles in Billings between December 22, 2011, and January 1, 2012, the Youth Court was statutorily authorized to impose restitution for the aggregate damages that resulted from that common scheme during the time period charged.
¶15 In re T.M.R. does not counsel a different result. In that case, we noted that the adult sentencing statutes did not apply to a disposition under the Youth Court Act, and thus the Court was compelled to “fill in the gap left by the legislature” in determining the amount of restitution that should be imposed. In re T.M.R., ¶¶ 16-18. In this case, the District Court did not apply adult sentencing statutes and there is no gap. Rather, aggregation of damages is allowed by the criminal statute defining “the offense for which the youth is disposed,” for which the Youth Court Act expressly authorizes restitution. Sections 41-5-1512(1)(d), -1513(1)(a), MCA. Our conclusion is not altered by construing the Youth Court Act’s restitution provision “in an ‘equitable fashion’” in order to effectuate “‘the intent of the legislature,”’ In re T.M.R., ¶ 18, since the expressed purposes of the Youth Court Act include restitution and accountability through “immediate” consequences of a youth’s actions. Section 41-5-102(2)(a), (c), MCA. As vandalism sprees are not uncommonly the province of young, *380 Immature offenders, we would do a disservice to the legislature’s intent were we to exempt youth from this application of the criminal mischief statute when they admit to participating in a common scheme.
¶16 Nonetheless, while the aggregation of damage may well be appropriate to achieve the accountability goals of the Youth Court Act, both that Act and the applicable criminal law call for an examination of the offender’s ability to pay. Sections 41-5-1521(l)(b), 45-6-101(2), MCA. The transcript of the dispositional and restitution hearing reflects almost no discussion of KE.G.’s ability to pay, except the Youth Court’s acknowledgment that it would be “nearly impossible” for him to meet the obligation, but that the court hoped he would “at least make some payments.” Since the record also reflects that K.E.G. did not object to a restitution order without evidence of his ability to pay, we consider whether the issue is appropriate for review on appeal.
¶17 We generally “refuse to review on appeal an issue to which the party failed to object at the trial court.” State v. Kotwicki, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892 (citing State v. Lenihan, 184 Mont. 338, 341, 602 P.2d 997, 999 (1979)). While we have recognized an exception to this general rule for review of an illegal sentence, Lenihan, 184 Mont, at 343, 602 P.2d at 1000, we do not apply that exception here, since the failure to consider a defendant’s ability to pay amounts only “to an objectionable sentence,” which we have refused to consider absent a contemporaneous objection. Kotwicki, ¶ 13.
¶18 Despite the absence of contemporaneous objection, we will conduct “plain error” review if an alleged error “implicate^] a defendant’s fundamental constitutional rights and if our failure to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.” In the Matter of C.T.P., 2004 MT 63, ¶ 15, 320 Mont. 279, 87 P.3d 399.
¶19 The Dissent correctly points out that we have reserved plain error review for questions implicating constitutional rights rather than statutory-based claims. Dissent, ¶ 30. The issue in this case, however, does have constitutional implications. Under Montana’s Constitution, a person under eighteen has “all the fundamental rights of [an adult] unless specifically precluded by laws which enhance the protection of such persons.” Mont. Const, art. II, § 15. We have recognized that a youth in the youth court system facing “a disposition different from an adult who has committed the same offenses” is “not similarly situated” to the adult with respect to Montana’s sentencing laws. In re S.M.K. *381 S.H, 2012 MT 281, ¶ 28, 367 Mont. 176, 290 P.3d 718. The disposition in a youth court case should effectuate the Youth Court Act’s purposes to prevent and reduce youth delinquency through a system that does not seek retribution but that provides consistent and enforceable consequences designed to accomplish a number of objectives, including rehabilitation of the youth, protection of the community, and restitution to victims. Section 41-5-102(2), MCA.
¶20 The criminal mischief statute expressly provides that, before a court may impose restitution, it must “determine the manner and amount of restitution after full consideration of the convicted person’s ability to pay the restitution.” Section 45-6-101(2), MCA (emphasis added). That subsection of the statute also requires that full payment of restitution “must be made prior to the release of state jurisdiction” over the offender.
¶21 Other courts have recognized the importance of a realistic, defined restitution order for juvenile offenders to “permit the juvenile to feel that he or she is gainfully making amends for past transgressions.” In re Laurance S., 742 N.W.2d 484, 489 (Neb. 2007) (citing State v. Kristopher G., 500 S.E.2d 519, 522 (W. Va. 1997) (stating that “[a]ny restitution award should ... be set in an amount that is within the realistic ability of the children to pay within a reasonable period of time, so that they can complete a probationary period, put... events behind them, and move forward”)). The “salutary purpose” an appropriate restitution order serves by “‘making the offender understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to’ the victim ..., would be directly undermined by the imposition of a restitution order that the juvenile is financially unable to pay.” In re Laurance S., 742 N.W.2d at 489 (quoting In re Brian S., 181 Cal. Rptr. 778, 780 (Cal. Ct. App. 1982)). Restitution may take on constitutional dimension in a youth case when the imposition fails to consider the enhanced protections embodied in the Youth Court Act’s objectives of promoting the development of youth and providing a program of supervision and rehabilitation that avoids retribution and keeps youth from becoming adult offenders. Section 41-5-102, MCA.
¶22 Given the significant amount of restitution at issue in this case, the youth’s commitment to Pine Hills, and the potential long-term consequences of the restitution order, KE.G.’s future earning capacity and any assets available to immediately put toward restitution were key considerations to determining whether his disposition would meet the objectives of the Youth Court Act and the *382 requirements of § 45-6-101(2), MCA. Under these circumstances, we conclude that the Youth Court’s failure to fully consider KE.G.’s ability to pay prior to imposing aggregate restitution may leave unsettled the fundamental fairness to K.E.G. of the proceedings against him and therefore constituted plain error.
¶23 For the foregoing reasons, the Youth Court’s April 25,2012 order is reversed in part and remanded with directions to the Youth Court to hold a new restitution hearing pursuant to §§ 45-6-101(2) and 41-5-1521(1), MCA, to consider KE.G.’s ability to pay the full amount of restitution.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, WHEAT and RICE concur.