DA 12-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 27

IN THE MATTER OF:

B.W.,

    A Youth.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DJ 12-009
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Wade Zolynski, Chief Appellate Defender; Kristen L. Larson,
Assistant Appellate Defender; Helena, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General; Katie F. Schulz,
Assistant Attorney General; Helena, Montana

        Scott Twito, Yellowstone County Attorney; Christopher Morris,
Deputy County Attorney; Billings, Montana

            Submitted on Briefs:  November 13, 2013
                  Decided:  February 4, 2014

Filed:

_____
                  Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 B.W. appeals a commitment order from the Montana Thirteenth Judicial District Youth Court, Yellowstone County, which ordered him to pay $78,702.09 in restitution. We reverse and remand.

¶2 A restatement of the dispositive issue on appeal is:

¶3 *Did the Youth Court err in holding B.W. jointly and severally liable for the full amount of restitution for damages when the State did not establish that B.W. was criminally liable for the acts of the other youths?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Between December 22, 2011, and January 1, 2012, the Billings Police Department responded to over 200 reports of vandalism. During this period, vandals shot the windows out of homes and vehicles with air guns, struck vehicles with baseball bats, and set two cars on fire. Local school resource officers led an investigation that indicated that B.W., a sixteen-year-old male, had participated in the vandalism.

¶5 On January 23, 2012, the State filed a petition alleging that B.W. was a juvenile delinquent for having committed the offense of criminal mischief, common scheme, a felony, in violation of §§ 45-6-101 and 45-2-101(8), MCA. Other youths involved in the vandalism were charged similarly. B.W. denied the State's allegations at his initial appearance. During a change of plea hearing in July, B.W. admitted to having committed criminal mischief, common scheme. B.W.'s counsel questioned him at the hearing only about his actions on December 22 and December 29, but specified that the actions were

2

"done in furtherance of a common scheme or as part of an action." The Youth Court accepted B.W.'s admission and change of plea.

¶6 On September 12, 2012, the Youth Court held a dispositional hearing. B.W. and the county attorney presented arguments on the proper amount of restitution. B.W. admitted to committing acts of vandalism on December 22 and December 29, and stated that he had no knowledge of the events on the other dates. He argued he should be accountable only for the amount of restitution from December 22 and December 29, whereas the State argued he should be accountable for all damages occurring over the eleven-day period. B.W. argued that:

> [t]he State chose to charge it as they charged it. They could have charged it as a common scheme for him for the two nights that he was there, and then common scheme by accountability for the nights he was not, and then they would have had to have shown that he had knowledge. They charged it how they charged it, and we would simply ask that the youth be held accountable for those nights to which he was present, aware and participated.

¶7 The Youth Court did not inquire into the extent of B.W.'s assets or his prospects for future earnings. In the youth probation report, the officer noted B.W. was employed at a local pizzeria, was doing well in school, and had no history of legal troubles. The report did not provide details concerning B.W.'s hours at the pizzeria or his wages.

¶8 After the hearing, the court entered a dispositional order adjudicating B.W. a delinquent youth for having committed criminal mischief, common scheme, a felony. The court also ordered B.W. to "pay restitution in the amount of $78,702.09 . . . in monthly payments of not less than $150.00 . . . or 50% of his wages whichever is greater, with the first payment due within 30 . . . days." The Youth Court retained jurisdiction

3

over B.W. for restitution purposes until his twenty-first birthday. B.W. appeals from the portion of the dispositional order that ordered him to pay $78,702.09 in restitution. This figure represents the total damages sustained over the eleven-day vandalism spree.

¶9 B.W. contends on appeal that the only offenses for which restitution was authorized were B.W.'s direct series of acts of criminal mischief on December 22 and December 29. B.W. argues that *In re K.E.G.*, 2013 MT 82, 369 Mont. 375, 298 P.3d 1151, a case regarding another Billings youth involved in the same spree of vandalism, is distinguishable because the parties did not squarely address the applicable law, and that our decision in *K.E.G.* "was manifestly wrong in interpreting the felony aggregation provision of the criminal mischief statute to authorize criminal liability for the direct acts of others." B.W. also argues that at a minimum this case must be remanded for a consideration of his ability to pay restitution.

¶10 The State counters that the Youth Court's order should be affirmed, that *K.E.G.* is directly on point, and that the State did not have to charge B.W. with accountability in order to recover the aggregate restitution amounts when charging under criminal mischief, common scheme. The State argues that B.W. failed to make a contemporaneous objection concerning the calculation of restitution and thus waived review of the issue.

## STANDARD OF REVIEW

¶11 The appropriate measure of restitution is a question of law, which we review for correctness. *K.E.G.*, ¶ 9.

**DISCUSSION**

¶12 *Did the Youth Court err in holding B.W. jointly and severally liable for the full amount of restitution for damages when the State did not establish that B.W. was criminally liable for the acts of the other youths?*

¶13 As an initial matter, we conclude B.W. did not waive appeal of the restitution calculations. "A defendant waives an objection and may not seek appellate review when a defendant fails to make a contemporaneous objection to an alleged error in the trial court." *State v. Paoni*, 2006 MT 26, ¶ 16, 331 Mont. 86, 128 P.3d 1040 (citations omitted). At the dispositional hearing, B.W. argued he should be held accountable only for the amount of restitution from December 22 and December 29, and immediately before the court adjourned, clarified: "And not to be beating a dead horse that has already left the barn, when he did make his admissions, he only made admissions as to the two nights." These statements were sufficient to preserve the issue for appeal.

¶14 We also conclude that *K.E.G.* is factually indistinguishable from this case. *K.E.G.* dealt with a youth involved in the same vandalism spree, and K.E.G., like B.W., argued he should be liable only for the destruction done on the nights he had participated in the vandalism. *K.E.G.*, ¶ 11. In *K.E.G.*, we determined that "the Youth Court was statutorily authorized to impose restitution for the aggregate damages that resulted from that common scheme during the time period charged" but remanded the case for a consideration of K.E.G.'s ability to pay restitution. *K.E.G.*, ¶¶ 14, 23. K.E.G. conceded he was part of a larger common scheme, but argued that he was responsible for restitution only for damage caused on the two evenings he was involved, and that "the joint and

5

several liability for restitution imposed under the criminal mischief statute should not be applied to youthful offenders." *K.E.G.*, ¶ 11.  However, K.E.G. did not argue, as does B.W., that an individual can be held liable for the criminal conduct of another only when acts of accountability or conspiracy are proven, or that § 45-6-101(4), MCA, does not allow for aggregate restitution.

¶15   We are mindful "that courts should not lightly overrule past decisions," but "*stare decisis* is not a rigid doctrine that forecloses the reexamination of cases when necessary." *Certain v. Tonn*, 2009 MT 330, ¶ 19, 353 Mont. 21, 220 P.3d 384 (citation omitted). Reexamination is necessary in this case because both K.E.G. and B.W. adamantly insisted that they should be liable only for the damage done on the nights they were present.  We see no grounds for any factual distinction between the cases, and we find B.W.'s arguments, presented here for the first time in this series of vandalism cases, to be persuasive and dispositive.  Thus, to the extent that we held K.E.G. was responsible for restitution for damages from the entire eleven-day spree, our decision in *K.E.G.* is overruled.

¶16   The Montana Youth Court Act states that a youth court may order restitution "in appropriate cases."   Section 41-5-102(2)(c), MCA.   When determining whether restitution is appropriate, the youth court may consider a number of factors, "in addition to any other evidence."  Section 41-5-1521(1), MCA.  Such factors include "the age of the youth, the ability of the youth to pay, the ability of the parents or guardians to pay, the amount of damage to the victim, and legal remedies of the victim."  *K.E.G.*, ¶ 12 (citations omitted).  Once the youth court determines that restitution is appropriate, it may

order the youth to pay restitution "for damages that result from the offense for which the youth is disposed." Sections 41-5-1512(1)(d), -1513(1)(a), MCA.

¶17 In this case, as in *K.E.G.*, the Youth Court determined that restitution was appropriate, and that B.W. was jointly and severally liable pursuant to § 45-6-101(1)(a), MCA, which provides that a person commits the offense of criminal mischief if the person knowingly or purposely injures, damages, or destroys any property of another without consent. B.W. admitted to committing the offense of criminal mischief pursuant to a common scheme, which is "a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense." Section 45-2-101(8), MCA. The "common scheme" to which he admitted, however, was comprised solely of the two incidents in which he participated.

¶18 Under Montana criminal law, an individual is responsible for his or her own conduct. *See e.g.* §§ 45-2-202, 1-3-211, -217, MCA. One may be responsible for the conduct of another only in limited circumstances. Section 45-4-102(1), MCA, imposes criminal liability on a person who has agreed with another to the commission of an offense. Sections 45-2-301 and -302, MCA, titled "Accountability for conduct of another" and "When accountability exists," describe those circumstances in which liability may be based upon the conduct of another. Compiler's Comments to § 45-2-301, MCA, at 157 (2012 Annotations). "A person is legally accountable for the conduct of another when, either before or during the commission of the offense, and with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or

7

attempts to aid another person in the planning or commission of the offense." *State v. High Elk*, 2006 MT 6, ¶ 25, 330 Mont. 259, 127 P.3d 432 (citing § 45-2-302(3), MCA). The requisite elements for holding a person legally accountable for the conduct of another under Montana's accountability statues are that: (1) either before or during; (2) the commission of an offense; (3) with the purpose to promote or facilitate such commission; (4) the person solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. *State v. Lyons*, 254 Mont. 360, 363, 838 P.2d 397, 399 (quotation marks omitted; citation omitted). Mere presence, or failure to disapprove or oppose criminal conduct, is an insufficient basis upon which to base a finding of accountability for the criminal conduct of another. *State v. Maetche*, 2008 MT 184, ¶ 17, 343 Mont. 464, 185 P.3d 980 (quotation marks omitted).

¶19 This Court has held that accountability is not a separate offense from the crime for which the actor assumes accountability but "is merely a conduit by which one is held criminally accountable for the acts of another." *State v. Hatten*, 1999 MT 298, ¶ 50, 297 Mont. 127, 991 P.2d 939 (citations omitted). The State is not required to set forth a theory of accountability in an indictment or information but has the burden of proving beyond a reasonable doubt the elements of accountability. *State v. Tower*, 267 Mont. 63, 67-68, 881 P.2d 1317, 1320 (1994); *State v. Matz*, 2006 MT 348, ¶ 15, 335 Mont. 201, 150 P.3d 367 ("The State has the burden of proving beyond a reasonable doubt every element of the offense charged, or any lesser-included crime within such charge . . . .") (citation omitted); *State v. Doyle*, 2007 MT 125, ¶ 55, 337 Mont. 308, 160 P.3d 516 ("In order for the jury to convict Doyle of deliberate homicide by accountability, the jury

8

would have had to conclude that the State met its burden of proof of showing beyond a reasonable doubt that Doyle: 1) had the purpose to promote or facilitate commission of deliberate homicide; and 2) had aided or abetted Maestas and Day in the planning or commission of deliberate homicide.") (citations omitted); *Maetche*, ¶ 25 (holding a reasonable trier of fact could have found beyond a reasonable doubt that Maetche was accountable for criminal mischief).

¶20 The State did not establish the elements of accountability or conspiracy, and indeed, maintains that it was not required to do so. The State contends there are other means by which a person can be held criminally liable for the acts of another, such as under the felony murder rule. B.W. distinguishes the felony murder and criminal mischief statutes, noting the felony murder rule expressly attaches culpability to the concept of legal accountability. Section 45-5-102(1)(b), MCA ("A person commits the offense of deliberate homicide if: . . . (b) the person attempts to commit, commits, or is legally accountable for the attempt or commission of [particular felony offenses] and in the course of the forcible felony . . . the person or any person legally accountable for the crime causes the death of another human being."). The criminal mischief statute, on the other hand, makes no provision for culpability by accountability.

¶21 In order to hold one accountable for the acts of another, the State must prove the elements of accountability beyond a reasonable doubt. *See Matz*, ¶ 15; *Doyle*, ¶ 55. We realize this case was resolved without a trial and B.W. pleaded guilty, but the State is still required to establish accountability for the acts of others if it intends to hold a defendant jointly and severally liable for damages inflicted by others. The State maintains that

9

establishing accountability in connection with crimes charged under the criminal mischief statute is unnecessary. We disagree. The criminal mischief statute creates no such provision or exception.

¶22 The State argues that § 45-6-101(4), MCA, grants the Youth Court authority to aggregate damages without proving accountability or conspiracy. Section 45-6-101(4), MCA, allows aggregation of amounts involved in offenses committed pursuant to a common scheme in determining "pecuniary loss." The State overstates the import of this subsection. By its clear terms, the section merely allows amounts involved in criminal mischiefs committed pursuant to a common scheme to be aggregated "in determining pecuniary loss." Section 45-6-101(4), MCA, provides no authority for aggregation for purposes of assessing joint and several restitution in cases in which proof of accountability or conspiracy is otherwise absent.

¶23 B.W. is correct that without evidence of accountability or conspiracy, he cannot be held responsible for the acts of the other youths. Sections 45-6-101(1)(a) and 45-2-101(8), MCA, do not impose responsibility for the acts of others (*see K.E.G.*, ¶¶ 47, 54 (McKinnon, J., dissenting)), nor does the evidence tend to support both common scheme and accountability. There is nothing in the record to establish that B.W. aided, abetted, or conspired in the commission of criminal mischief, common scheme, on nights he was not present. B.W. did not own the air guns, baseball bats, or car used in the vandalism. He did not participate in the shooting game or target a victim on the nights he was not present, and there was no evidence that he aided others in the planning of the vandalism spree.

¶24    B.W. concedes that, given his acquiescence in the Youth Court, he can be held liable for all damages caused on December 22 and December 29, whether all the damage resulted from his direct actions or not. Thus, the court was authorized to impose a restitution order of at most $5,851.12 (the total sum of damages from December 22 and December 29).

¶25    The Dissent cites § 41-5-1402(1)(b), MCA, for the proposition that the petition and supporting affidavit "adequately alerted the youth of the charge and the aggregate damage that resulted." It is evident that the affidavit attached to the petition in B.W.'s case was used to support the petitions filed against all youths involved in the vandalism spree. To that end, it does recite the aggregate damage done by all the youths on various nights. Notably, the spreadsheet attached to the petition as an exhibit also lists incidents of vandalism that occurred outside of the dates of the charged vandalism spree, ranging from December 2, 2011, to January 8, 2012. Moreover, the affidavit reflects that from the inception of the investigation B.W. admitted to damaging a vehicle and shooting a gun with others involved in the spree on two nights only—December 22 and December 29.

¶26    While the affidavit did summarize the aggregate damage, nowhere in the petition or the affidavit is there an indication that the State would seek to hold each youth— regardless of the extent of his participation—jointly and severally liable for all the damages inflicted by all the other boys on all the other nights or for damages inflicted beyond the dates of the spree. Section 41-5-1402(1)(b)(iii), MCA, obligates the State to "state the facts constituting the offense in ordinary and concise language and in a manner

11

that enables a person of common understanding to know what is intended." B.W. did not know when he admitted to the detective that he participated in the vandalism on two nights that "what is intended" is that he be held responsible for tens of thousands of dollars in damages inflicted by others while he was not present.

¶27    There was likewise no reference to an intent to impose joint and several liability when the youth appeared in court for his change of plea. B.W.'s attorney asked him whether he and a group of other juveniles inflicted property damage on the nights of December 22 and December 29, and he agreed he had done so. The court then inquired: "And on those two nights in question, were they done in furtherance of a common scheme or as part of an action?" B.W. answered yes. As noted below, though B.W. admitted to inflicting relatively little damage on the two nights, he conceded he could be held liable for all damages inflicted by common scheme on the two nights in question, as the court stated. He did not ever admit responsibility for the aggregate damage.

¶28    Although not articulated, the underpinning of the Dissent is that once a case is charged and pleaded under common scheme, accountability for offenses in which one did not participate is presumed and need not be proven, and aggregate restitution is appropriate. We conclude as a matter of law that this is an erroneous interpretation of the law, and the reason we issue this Opinion is to correct this misimpression. This case and *K.E.G.* present an anomalous situation, in that they arise out of one vandalism spree, are premised upon identical facts, and involve a hefty aggregate restitution order challenged by both juveniles. The difference between the two cases is that, in the instant case, B.W. concisely challenged the imposition of restitution on the grounds that charging a case

12

under common scheme does not render the defendant accountable for the crimes of others in which he did not participate. To establish accountability, more is needed. As our Opinion reflects, we agree with this argument.

¶29 We do not take lightly the substantial importance of *stare decisis*. However, we see no principled way to reverse the order of restitution against B.W. and yet refuse to overturn an identical order of aggregate restitution imposed upon K.E.G. Though these parties posited different legal arguments in their respective appeals, both consistently maintained in District Court and on appeal that they were involved in only two evenings of vandalism and should not be held liable in restitution for the remaining events in which they did not participate. Because we conclude that our decision here should in fairness apply to the companion case, we overturn the result reached in *K.E.G.*

¶30 Given our determination that the Youth Court erred in holding B.W. jointly and severally liable for the full amount of restitution for damages, we reverse and remand for entry of a revised restitution order in accordance with this Opinion. However, we note that, pursuant to *K.E.G.*, the court on remand should consider B.W.'s ability to pay when assessing restitution.

## CONCLUSION

¶31 For the foregoing reasons, the Youth Court's September 13, 2012 order is reversed in part and remanded with directions to the Youth Court to hold a new restitution hearing.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT


Justice Beth Baker dissents.

¶32 Although I do not disagree with most of the general principles of law the Court articulates in its Opinion, those principles do not apply in this case, just as they did not apply in *Matter of K.E.G.* I do not believe there is sufficient justification to overrule *K.E.G.* I would affirm the Youth Court's determination that it had authority under the facts of this case to impose restitution for the aggregate pecuniary loss occasioned by the common scheme to which B.W. admitted. As the Court did in *K.E.G.*, I would remand for a new restitution hearing to consider B.W.'s ability to pay.

¶33 The petition in this case, filed January 23, 2012, alleged that B.W. was a Delinquent Youth

> for the reason that on or about December 22, 2011, to January 1, 2012, in Yellowstone County, Montana, he committed the following delinquent acts:
>
> **CRIMINAL MISCHIEF (COMMON SCHEME) (FELONY)**
>
> That from about December 22, 2011, to January 1, 2012, the Youth, [B.W.], knowingly or purposely injured, damaged, or destroyed property of another or public property without consent, and did so in a series of acts motivated by a purpose or plan which resulted in the repeated commission of the same offense or that affected the same person or persons or their property, to wit: the Youth with L.P. (born in October 1995), T.B. (born in April 1997), J.E. (born in July 1996), and/or J.E. (born in July 1996), damaged several vehicles, and the aggregated pecuniary loss is in excess of $1500.00; in Billings, Yellowstone County, Montana; all of which is a violation of Sections 45-6-101 and 45-2-101(8), Montana Code Annotated, and against the peace and dignity of the State of Montana.

14

¶34 Attached to the petition was an affidavit providing details about the entire vandalism spree and information gathered by police detectives, together with a twelve-page exhibit, comprising a spreadsheet listing each incident of vandalism alleged to have been part of the common scheme, identifying the date, location, victim number, and the property damaged. The affidavit included a list of the juveniles suspected to have participated on each occasion, noting B.W.'s suspected participation on the dates of December 22 and 29, and again listing all dates and suspected participants for the entire common scheme charged. The petition set forth in substantial detail the facts of the charged offense and adequately alerted the youth of the charge and the aggregate damage that resulted. *See* § 41-5-1402(1)(b), MCA.

¶35 On July 18, 2012, B.W. and his counsel appeared before the Youth Court, at which time counsel advised the court that B.W. was prepared "to withdraw his previously entered denial and enter an admission to the petition." The Youth Court questioned B.W. as to whether he recalled the rights of which he previously had been advised and, following his affirmative response, asked "whether you admit or deny the charge in the Petition of Criminal Mischief, Common Scheme, Felony, alleged to have occurred on or about December 22, 2011, to January 1st, 2012, in Billings, Yellowstone County, Montana?" B.W. answered, "Yeah, admit, yes, Ma'am." Following additional questioning, the Court then asked B.W. to explain what he did "that makes you admit" the charge. Counsel inquired of B.W. whether he went around Billings with a group of other juveniles "on or about December 22nd and the 29th" and damaged property of

15

others. B.W. said "yes" and then agreed with his counsel that "those two nights in question" were "done in furtherance of a common scheme or as part of an action." After several additional questions to ascertain the voluntariness of his plea and satisfaction with counsel, the court accepted B.W.'s admission and the hearing concluded.

¶36 When the matter of restitution was argued at the disposition hearing, the Youth Court acknowledged the significant amount of aggregate restitution and defense counsel's argument that the State "could have charged it differently." The court noted, however, that B.W. "pled to participating in criminal mischief, common scheme, from December 22nd, 2011, to January 1st, 2012." The court emphasized that "the important thing is you've pled to the common scheme, meaning that you pled to being involved in a crime of destroying other people's property that was motivated by a purpose or plan, and it resulted in the commission repeatedly of this same offense, and that is this criminal mischief."

¶37 Just as in *K.E.G.* (¶ 14), B.W.'s admission to the offense as charged is the reason that the imposition of aggregate restitution was lawful in this case. The Court's lengthy discussion of notice and accountability is academic. B.W. had ample notice of the charges and entered a plea to the inclusive dates charged in the common scheme. The Court does not address the effect of the charging document that specifically alleged all dates of the vandalism spree. The law is clear that, "where a defendant voluntarily and knowingly pleads guilty to an offense, the plea constitutes a waiver of all nonjurisdictional defects and defenses . . . ." *State v. Kelsch*, 2008 MT 339, ¶ 8, 346 Mont. 260, 194 P.3d 670. This includes complaints about the adequacy of the charge.

16

*State v. Spreadbury*, 2011 MT 176, ¶¶ 8-13, 361 Mont. 253, 257 P.3d 392. "The reasoning is that a person pleading guilty is convicted and sentenced on his plea, not on the evidence." *Kelsch*, ¶ 8 (quoting *State v. Turcotte*, 164 Mont. 426, 428, 524 P.2d 787, 788 (1974)). Because of the specific dates charged and the admission to that charge, proof of accountability was not required to hold B.W. responsible for the aggregate offense. B.W.'s testimony at the plea hearing did not affect the charge he admitted, but simply satisfied the Youth Court's duty to "ascertain, from admissions made by the defendant at the plea colloquy, that the acts of the defendant, in a general sense, satisfy the requirements of the crime to which he is pleading guilty [or admitting]." *State v. Frazier*, 2007 MT 40, ¶ 20, 336 Mont. 81, 153 P.3d 18.

¶38 In light of the fact that both youths were charged identically and both admitted the offense as charged, the Court in my view has not justified why a reexamination of *K.E.G.* is "necessary" and warrants reversing that case, decided less than a year ago. Of course, "[c]ourt decisions are not sancrosanct . . . and *stare decisis* is not 'a mechanical formula of adherence to the latest decision[.]'" *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996) (citing *Patterson v. MacLean Credit Union*, 491 U.S. 164, 172, 109 S. Ct. 2363, 2370 (1989)). Still, ostensible "concerns for stability, predictability and equal treatment" in the law (*Formicove, Inc. v. Burlington N., Inc.*, 207 Mont. 189, 194, 673 P.2d 469, 472 (1983)) are ill-served by the decision today. The Court crafts a result to address what is an issue only because the youth admitted to the offense as charged instead of either negotiating an amended charge or putting the State to its proof of his participation in the common scheme as charged.

¶39 I concur with the decision to remand, but would do so for the sole purpose of having the Youth Court impose a new restitution obligation after consideration of B.W.'s ability to pay. I dissent from the Court's holding that the Youth Court lacked authority to impose restitution for the aggregate pecuniary loss resulting from the common scheme charged in the petition.

/S/ BETH BAKER

Justice Jim Rice joins in the dissenting Opinion of Justice Baker.

/S/ JIM RICE