FILED

06/23/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0138

DA 19-0138

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 160

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

RAVEN SKYE PIERRE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                   In and For the County of Lake, Cause No. DC 18-260
                   Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Gregory Dee Birdsong, Birdsong Law Office, P.C., Missoula, Montanan

       For Appellee:

           Timothy C. Fox, Montana Attorney General, Jeffrey M. Doud, Assistant
           Attorney General, Helena, Montana

           Steven Eschenbacher, Lake County Attorney, Polson, Montana

                              Submitted on Briefs:  May 13, 2020

                                    Decided:  June 23, 2020

Filed:

                                _____
                                       Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Raven Skye Pierre (Pierre) appeals his judgment of conviction and sentence in the Montana Twentieth Judicial District Court, Lake County, on the offense of burglary, a felony.  We address the following issue:

> *Whether the District Court erroneously required Pierre to pay restitution for losses resulting from offenses committed by others absent evidence of criminal accountability or a causal connection between his offense and those losses?*

¶2    Reversed and remanded.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In 2018, Elden and Betty White (the Whites) were away on an extended trip when a Lake County sheriff's detective received a report of an apparent burglary of the main house on their residential property in Polson, Montana (White property).  Upon setup of various surveillance cameras and subsequent investigation, the detective ascertained that a group of five associates involved with methamphetamine use variously entered into the main house, a separate garage/barn, and/or a separate guest house on the White property on several occasions in June-July 2018 with the purpose of stealing property therefrom. The burglars apparently entered the main house through an unlocked sliding door, kicked in the door to the guest house, and simply walked into the doorless garage/barn.

¶4    After the investigation focused on him as one of the persons involved in the White burglaries, Pierre admitted to law enforcement that he was present at least twice with his associates on the larger White property with knowledge that they intended to and were in fact burgling various structures on the property.  Pierre admitted that he personally entered

2

the guest house on one occasion, and removed collectible dolls found therein. He adamantly denied, however, ever entering the main house or otherwise aiding the others in the commission of any main house burglary or theft. Consistent with his denial, law enforcement surveillance cameras did not capture Pierre entering or leaving any of the White property structures.

¶5 The investigating detective eventually obtained a warrant to search the home of Vickie Hitchcock, Pierre's roommate and another of the suspected White property burglars. In Pierre's bedroom, the detective found and recovered the collectible dolls Pierre admitted taking from the White guest house. Also found and recovered from the bedroom were one or more sets of antlers missing from the White garage/barn. The detective was ultimately unable, however, to develop particularized information indicating that, beyond his after-the-fact possession of stolen antlers and his admitted entry and theft from the guest house, Pierre actually participated or aided/abetted others in the related burglaries of the White main house or garage/barn. The State consequently charged Pierre with only one offense—a single count of burglary of the White guest house.[1]

¶6 Pierre subsequently pled guilty via plea agreement to burgling the guest house as charged. In conjunction with similar recommendations in separate cases independently charging him with methamphetamine possession and burglary at a different location, the plea agreement called for the State to recommend a three-year deferred imposition of

---

[1] As pertinent here, § 45-6-204(1)(a), MCA, defines burglary as "knowingly enter[ing] or remain[ing] unlawfully in an occupied structure" with "the purpose to commit an offense [there]in."

sentence with restitution to be determined. Upon his change of plea, the District Court adjudicated Pierre guilty of burglary, ordered a presentence investigation (PSI) by the Montana Department of Corrections (DOC), and set a sentencing date.

¶7 Based on the insurance accounting and proceeds previously paid to the Whites under their homeowners insurance policy, the DOC PSI reported $43,294.46 as the total amount of pecuniary loss sustained by the Whites as a result of the undifferentiated June-July 2018 burglaries and thefts of and from their property. By prior written objection, and again at hearing, Pierre objected to the court's intent, stated at the change of plea hearing, to impose joint and several liability for the entire pecuniary loss sustained by the Whites, regardless of who actually participated in each of the separate incidents of burglary and theft from the various structures on their property.

¶8 At the sentencing hearing, under cross-examination, the investigating sheriff's detective acknowledged that he had no non-speculative evidence indicating that Pierre had in fact entered the main house, otherwise participated in any of the main house burglaries or thefts, or took any affirmative act to aid or abet the others in the commission of those burglaries and thefts. Though he later found Pierre in possession of antlers taken from the White garage/barn, the detective also acknowledged the lack of any non-speculative evidence indicating that Pierre was the person who entered the garage/barn, removed the antlers therefrom, or otherwise aided or abetted others in doing so. Based on those acknowledgments, and the additional fact that the stolen dolls and antlers found in his possession were recovered undamaged, Pierre asserted at sentencing that there was no

4

evidentiary basis upon which to make him responsible for any pecuniary loss sustained by the Whites as a result of any of the June-July 2018 burglaries and thefts at issue.

¶9 The District Court concluded, however, that Pierre should be jointly and severally responsible with his associates for the entire amount of pecuniary loss sustained by the Whites as a result of the June-July 2018 burglaries because he was knowingly present outside on the property on at least two occasions when his associates burgled and stole from the main house.[2] The court reasoned that "people are jointly and sever[ally] liable for damages . . . caused when they're working with people that are involved in criminal activities." The court thus ordered that Pierre was jointly and severally liable with his unnamed and separately charged associates for the total undifferentiated amount of pecuniary loss ($43,294.46) sustained by the Whites as a result of all of the subject June-July 2018 burglaries and thefts from the various structures on their property. Pierre timely appeals.

## STANDARD OF REVIEW

¶10 We review criminal restitution orders for compliance with §§ 46-18-241 through -249, MCA. *See State v. Dodge*, 2017 MT 318, ¶ 6, 390 Mont. 69, 408 P.3d 510; *State v. Johnson*, 2011 MT 116, ¶ 13, 360 Mont. 443, 254 P.3d 578; *State v. Pritchett*, 2000 MT 261, ¶ 7, 302 Mont. 1, 11 P.3d 539. We review related conclusions and applications of law de novo for correctness. *Pritchett*, ¶ 18. We review related findings of

---

[2] There is no assertion or record indication on appeal of any damage or pecuniary loss sustained by the Whites related to any burglary or theft from the doorless garage/barn.

5

fact only for clear error. *Johnson*, ¶ 13.  Findings of fact are clearly erroneous only if not supported by substantial evidence, the lower court clearly misapprehended the effect of the evidence, or we are firmly convinced upon our review of the record that the court was otherwise mistaken.  *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421.

**DISCUSSION**

¶11  *Whether* the *District Court erroneously required Pierre to pay restitution for losses resulting from offenses committed by others absent evidence of criminal accountability or a causal connection between his offense and those losses?*

¶12  Upon sentencing in a criminal case, courts must require defendants to pay restitution in an amount sufficient to fully compensate victims for all pecuniary loss substantiated by record evidence to have been caused by the defendant's criminal conduct. Sections 46-18-201(5), -241(1), and -243(1), MCA.[3]  *See also, e.g., State v. Brownback*, 2010 MT 96, ¶¶ 20-23 and 25, 356 Mont. 190, 232 P.3d 385 (direct or indirect "causal relation between the offender's criminal conduct and [asserted] pecuniary loss is the touchstone for determining" entitlement to restitution); *State v. Breeding*, 2008 MT 162, ¶¶ 13 and 18-19, 343 Mont. 323, 184 P.3d 313 (noting "causal standard" embodied in § 46-18-243(1)-(2), MCA).  Paraphrased as a causation standard, an offender's statutory restitution obligation is expressly limited, as pertinent, to loss suffered "*as a result of the commission of an offense*" and constituting substantiated "special damages . . .

---

[3] In this context, as pertinent, "pecuniary loss" means "all special damages, but not general damages, substantiated by [record] evidence . . . that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities" and "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued *as a result of the offender's criminal conduct*." Section 46-18-243(1)(a)-(b), MCA. (Emphasis added.)

recover[able] against the offender in a civil action *arising out of the facts or events constituting the offender's criminal activities*" or the "replacement cost of property taken, destroyed, harmed, or otherwise devalued *as a result of the offender's criminal conduct.*" *See* §§ 46-18-241(1), -243(1)(a)-(b), (2)(a)(i)(A), and (2)(a)(ii)(A), MCA (defining recoverable "pecuniary loss" and referencing pecuniary loss sustained by statutorily defined "victims"—emphasis added).[4] Consequently, an offender is responsible only for pecuniary victim losses he or she has agreed to pay or that are directly or indirectly caused by an offense he or she committed or is criminally accountable. *State v. Simpson*, 2014 MT 175, ¶ 14, 375 Mont. 393, 328 P.3d 1144 (citing *Breeding*, ¶ 19); *In re B.W.*, 2014 MT 27, ¶¶ 18-21, 23-24, and 29-30, 373 Mont. 409, 318 P.3d 682; *Brownback*, ¶¶ 20-23 and 25; *Breeding*, ¶¶ 13, 16, and 19-20; *State v. Beavers*, 2000 MT 145, ¶¶ 10-12, 300 Mont. 49, 3 P.3d 614, *overruled on other grounds by State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978. *Accord City of Billings v. Edward*, 2012 MT 186, ¶¶ 27-30, 366 Mont. 107, 285 P.3d 523.

¶13 The sentencing court may find the requisite causal nexus for restitution, between an offender's admitted or adjudicated criminal conduct and the asserted victim loss, upon an admission, by implication from proof of the elements of the charged offense, upon victim

---

[4] The causal standard of § 46-18-243(1)(a) and (2)(a)(i)(A), MCA, "follows the [incorporated] contours of civil" causation standards and is thus subject to "any defenses [to causation] that the offender could raise in a civil action" for compensation for the subject pecuniary loss. *State v. Workman*, 2005 MT 22, ¶ 19, 326 Mont. 1, 107 P.3d 462. *See also State v. Aragon*, 2014 MT 89, ¶ 16, 374 Mont. 391, 321 P.3d 841 (noting that criminal restitution statues "engraft[] a civil remedy" into a criminal case).

affidavits included with a PSI, or upon other evidence presented at or incident to sentencing. *See* §§ 46-18-241(1), -242(1)(b), and (2), MCA; *Simpson*, ¶ 14; *B.W.*, ¶¶ 19-23; *Edward*, ¶¶ 29-30. The State has the burden of proving the requisite causal connection or criminal accountability for restitution in any event. *See also Aragon*, ¶ 16; *B.W.*, ¶¶ 19-23; *Breeding*, ¶ 18; *Beavers*, ¶ 12.

¶14　In *Brownback*, the defendant's mother repeatedly embezzled by forgery from her husband's business and her employer (the State of Montana) to obtain money to help the defendant with gambling-related financial problems. *Brownback*, ¶¶ 7-8. She later stated that she did so only in response to his "desperate pleas," tantamount to "emotional blackmail," for money to avoid going to jail and losing his home and family. *Brownback*, ¶ 8 (internal alterations omitted). Denying any knowledge or participation in his mother's embezzlement from the State, the defendant ultimately pled guilty by plea agreement to theft by common scheme based on his knowing "unauthorized control" over the lesser amounts she embezzled from his step-father's business. *Brownback*, ¶¶ 11-12. Based on the limited scope of his admitted criminal conduct and his denial of any knowledge or participation in his mother's embezzlements from the State, the defendant asserted at sentencing that he was not responsible in restitution for monies she embezzled from the State. *Brownback*, ¶¶ 12-13. Rejecting that assertion, the District Court ordered the defendant to pay "nearly $1 million in restitution, including $739,312 to the State." *Brownback*, ¶ 14.

¶15 On appeal of the restitution obligation to the State, the defendant did not "specifically deny the causal relation between his criminal conduct and the State's loss." *Brownback*, ¶ 21. As before, he asserted, rather, that he was nonetheless not responsible for the State's loss because he neither participated in, nor was aware of, the embezzlements from the State. *Brownback*, ¶ 21. We disagreed, noting that §§ 46-18-201(5), -241(1), and -243(1)-(2), MCA, do not require that an offender "know about a specific loss caused by his [or her] criminal conduct" as long as a direct or indirect causal connection exists between the offender's criminal conduct and the victim loss at issue. *Brownback*, ¶¶ 22-23. Based on his mother's undisputed record statements that the defendant's desperate pleas for help were the cause of her embezzlements and that he in fact received all of the embezzled monies, we affirmed, holding that a sufficient indirect causal connection existed for purposes of §§ 46-18-201(5), -241(1), and -243, MCA, between his admitted criminal conduct and the State's documented loss. *Brownback*, ¶¶ 22-24 (distinguishing *Breeding*).

¶16 In contrast, in *Beavers*, the defendant pled guilty by plea agreement to four counts of felony theft based on admissions that she knowingly accepted various items of stolen property from one or more third parties in exchange for illegal drugs. *Beavers*, ¶¶ 1-4. At sentencing, over the objections of both the State and the defendant, the District Court ordered her to pay PSI-documented restitution to the third-party owners of the stolen property, and/or their insurers, based on findings that: (1) her admitted thefts helped deprive the owners of their property for over a year; (2) they incurred the costs of related insurance deductibles to obtain compensation; (3) their insurers incurred the cost of paying

9

the compensatory policy proceeds; and (4) the owners and insurer were thus victims of the admitted thefts. *Beavers*, ¶ 5.

¶17     On appeal, we agreed with the defendant that, in the absence of evidence that she was responsible for the initial thefts, her admitted criminal activity (i.e., after-the-fact possession of stolen property) was not the direct or primary cause of the victims' losses. *See Beavers*, ¶¶ 10-11.  We held, however, that a record secondary or indirect causal connection nonetheless existed between her admitted after-the-fact possession of the stolen property and the victims' related pecuniary losses. *Beavers*, ¶ 11.  But, based on her denial that she had not possessed all of the stolen property at issue, and the accompanying lack of evidence to the contrary or that she was criminally accountable for the initial thefts of those other items, we held that the defendant was not responsible for restitution for victim losses related to stolen property that she did not steal or possess after-the-fact. *Beavers*, ¶ 10.  We thus vacated the restitution award and remanded for redetermination based only on the losses related to the items of stolen property the defendant admitted and was convicted of possessing. *Beavers*, ¶ 12.

¶18     *Breeding* somewhat similarly involved a scenario where the defendant, who was not criminally responsible for the initial theft of a motor vehicle, pled guilty to related after-the-fact criminal conduct that contributed to the total loss sustained by the vehicle owner as a result of the initial theft. *See Breeding*, ¶¶ 2-5.  After the initial theft committed by the separately charged co-defendant, Breeding, allegedly with knowledge of the theft, was a willing passenger in the vehicle when the co-defendant later took it off-roading and

crashed into a snow-covered haystack, causing significant damage. *Breeding*, ¶¶ 2-5. Based on his affirmative suggestion and participation with his co-defendant in their subsequent shared driving of the vehicle to California, Breeding was later charged and pled guilty to theft of the vehicle. *Breeding*, ¶ 5. However, on the asserted ground he was not involved in the initial theft and damaging of the vehicle by the co-defendant, Breeding asserted at sentencing that he was not responsible for the portion of the total PSI-documented victim loss ($7,382.42) resulting from the initial theft and damaging of the vehicle by the co-defendant prior to the time that they jointly took the vehicle to California. *Breeding*, ¶ 5. Despite recognizing that he "did not actively participate [in] the initial theft," the District Court reasoned that Breeding was still jointly and severally liable with the separately charged co-defendant because:

> he [nonetheless] participate[d] . . . [by] join[ing] the co-defendant . . . on a [subsequent] trip to California . . . [and] participated in driving . . . knowing [the vehicle was stolen]. . . . And while he was not driving at the time . . . and did not necessarily encourage the conduct that resulted in the [initial] damage, . . . [his subsequent] participati[on] in the [theft] . . . qualif[ies] [him] as being jointly and severally responsible for . . . the [total] damage. . . . [His] knowledge that the vehicle was stolen and his [subsequent] active participation in taking the vehicle . . . to California . . . make[s] him sufficiently responsible . . . [because] his involvement was more than just . . . simply [being] present when the damage occurred.

*Breeding*, ¶ 7.

¶19    However, on appeal, we noted that "[t]here [was] nothing in the record indicating that the charge against Breeding and . . . to which he [pled] guilty were based on any of the events that occurred prior to his suggest[ion]" and participation in driving the vehicle to

11

California. *Breeding*, ¶ 16. Reversing and remanding with direction to strike the erroneous portion of the restitution award, we thus ultimately held that:

> while an offender is liable for restitution for offenses to which he or she has admitted, has been found guilty, or has agreed to pay restitution, . . . the only offense to which Breeding has admitted, has been found guilty, and has agreed to pay restitution is the theft that occurred when he participated in driving the [vehicle] to California. There is no statutory authority for imputing to [him] the damage caused in the course of [his co-defendant's prior] offense. Indeed, . . . [a] defendant . . . [is not responsible for] restitution in excess of the damages caused by his criminal conduct. . . . [T]he District Court [thus erroneously] . . . require[d] Breeding to pay restitution for damage to the [vehicle] which did not occur as a result of his offense of theft.

*Breeding*, ¶¶ 19-20 (citing *Beavers*, ¶ 12—internal citation and alteration omitted).

¶20 Likewise, in *In re B.W.*, a youth pled true to the offense of criminal mischief by common scheme based on his participation on two nights of an 11-day vandalism spree involving over 200 incidents of vandalism committed by a number of separately charged youths. *B.W.*, ¶ 5. At his change of answer hearing, the youth admitted through counsel, *inter alia*, that he participated in two nights of the 11-day spree "in furtherance of a common scheme." *B.W.*, ¶ 5. Based on the youth's admission regarding the larger common scheme, the Youth Court ordered him to pay $78,702.09 in restitution, representing the total amount of pecuniary losses sustained by all victims over the entire 11-day spree, regardless of the subject youth's limited two-night participation. *B.W.*, ¶ 8.

¶21 On appeal of the restitution order in excess of the victim loss caused by the vandalism on the two nights B.W. was involved, we noted that, like § 46-18-241, *et seq.*, MCA, the Youth Court Act requires a causal connection between the claimed restitution and the admitted or adjudicated criminal conduct of the youth. *See B.W.*, ¶ 16

12

(citing §§ 41-5-1512(1)(d) and -1513(1)(a), MCA). We further noted that, under our 1973 Criminal Code,[5] an individual is criminally responsible only for his or her own conduct except upon proof that he or she "is legally accountable for the conduct of another" by affirmatively soliciting, aiding, abetting, or agreeing or attempting to aid the other in the planning or commission of an offense. *B.W.*, ¶ 18 (citing §§ 45-2-202, -301, -302, 1-3-211, -217, and 45-4-102(1), MCA). In that regard, we noted as a threshold matter that requiring an offender to pay restitution for loss caused by the criminal conduct of another does not necessarily require, prior to sentencing, a specific charge and admission or verdict of criminal accountability, as defined by §§ 45-2-301 and -302, MCA. *B.W.*, ¶¶ 19-23. We nonetheless held that, in such absence, restitution premised on accountability for the criminal conduct of another then necessarily requires the State to present proof beyond a reasonable doubt at sentencing of the asserted criminal accountability, as defined by §§ 45-2-301 and -302, MCA. *B.W.*, ¶¶ 19-23. Based on the manifest absence of record proof beyond a reasonable doubt that B.W. was accountable for the criminal conduct of others (by aiding, abetting, or technical conspiracy) on the nights he was not present, we held that the Youth Court erroneously required him to pay restitution for victim losses resulting from vandalism committed by others on those other nights. *B.W.*, ¶¶ 23-24 and 29-30.[6]

---

[5] See § 45-1-101, *et seq.*, MCA, as amended.

[6] In addition to criminal accountability as defined by § 45-2-301 and -302, MCA, our *B.W.* analysis and holding further encompassed an alternative restitution premise—proof beyond a reasonable doubt of conspiracy, as defined by § 45-4-102, MCA. *See B.W.*, ¶¶ 14, 20, and 22-23. The State does not assert conspiracy as a premise for the restitution here.

¶22 Here, regardless of his admitted presence on the larger White property on at least two occasions with associates with knowledge and apparent approval of their criminal intent and acts in furtherance of burgling the main house, the State charged and convicted Pierre on a single discrete offense—burglary of the guest house. There is no record evidence that his admitted commission of the guest house burglary directly caused any pecuniary loss resulting from any burglary of the main house or doorless garage/barn by others. Unlike in *Brownback*, the State cites no non-speculative record evidence sufficient to prove even an indirect causal connection between Pierre's guest house burglary and pecuniary loss resulting from any main house burglar or theft committed by his associates. As in *Beavers*, *Breeding*, and *B.W.*, other than pointing out asserted ambiguities in his law enforcement interview, the State cites no non-speculative record evidence supporting its propositions on appeal that Pierre actively participated, or otherwise aided, abetted, or solicited others, in any burglary or theft of or from the Whites' main house. Thus, there is no record evidence of anything other than Pierre's mere presence at the scene of those crimes with associates, with knowledge of their criminal intent and acts in furtherance of those crimes, without attempting to deter or prevent them from doing so. Mere presence at the scene of a crime, even with knowledge and approval of the criminal intent or acts of others, is not a crime and is insufficient alone to establish criminal accountability for a crime committed by others under §§ 45-2-301 and -302, MCA. *B.W.*, ¶ 18; *State v. Flatley*, 2000 MT 295, ¶ 12, 302 Mont. 314, 14 P.3d 1195; *State ex rel. Murphy v. McKinnon*, 171

14

Mont. 120, 125, 556 P.2d 906, 909 (1976). *Accord State v. Locke*, 2008 MT 423, 347 Mont. 387, 198 P.3d 316 (Nelson, J., dissenting).

¶23 Here, as in *Beavers*, *Breeding*, and *B.W.*, the State did not charge or convict Pierre on any of the main house burglaries or related thefts for which it asserts restitution. Nor did he agree to pay restitution for those crimes or admit any involvement in or causative link thereto. As in *Beavers*, *Breeding*, and *B.W.*, the State has further failed to present or cite evidence sufficient to establish either that Pierre was criminally accountable for any main house burglary pursuant to §§ 45-2-301 and -302, MCA, or, as in *Brownback*, even an indirect causative link between his admitted criminal conduct and any loss sustained by the Whites as a result of the commission by others of any main house burglary, or related theft. Under these circumstances, we hold that the District Court erroneously ordered Pierre to pay restitution for pecuniary losses sustained by the Whites as a result of the various burglaries, and related thefts, of and from their main house in June-July 2018. Due to the focus on appeal on the Whites' pecuniary loss resulting from the main house burglaries, it is unclear from the record and briefing whether the existing record is sufficient to establish a causative link between Pierre's admitted guest house burglary and any pecuniary loss incurred by the Whites regarding the repair or replacement of the kicked-in guest house door.

## CONCLUSION

¶24 We hold that the District Court erroneously ordered Pierre to pay restitution for pecuniary losses sustained by the Whites as a result of the June-July 2018 burglaries, and

15

related thefts, of and from the main house on their Polson property.  We accordingly reverse the court's restitution order and remand for determination on the existing record of appropriate restitution, if any, directly or indirectly caused by his admitted guest house burglary.

¶25    Reverse and remand.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE