FILED

03/18/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0519

DA 23-0519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 51

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　　v.

LOREN DEAN RAVER,

　　　　Defendant and Appellant.

APPEAL FROM:　District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-20-1562
Honorable Jessica T. Fehr, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Tammy Hinderman, Appellate Defender Division Administrator, Jeff
　　　　　　N. Wilson, Assistant Appellate Defender, Helena, Montana

　　　　For Appellee:

　　　　　　Austin Knudsen, Montana Attorney General,　Thad Tudor, Assistant
　　　　　　Attorney General, Helena, Montana

　　　　　　Scott Twito, Yellowstone County Attorney, Margaret Gallagher,
　　　　　　Deputy County Attorney, Billings, Montan

　　　　　　　　Submitted on Briefs:　February 19, 2025

　　　　　　　　　　Decided:　March 18, 2025

Filed:

　　　　　_____
　　　　　　　　　　Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Loren Dean Raver (Raver) challenges the amount of restitution awarded by the Thirteenth Judicial District Court, Yellowstone County, following his theft of a pickup truck. We review the following restated issue on appeal:

> *Whether the District Court erred in awarding restitution based on an insurer's testimony that the contested damage was attributable to the defendant's theft and the District Court concluded that the defendant's conflicting testimony was not credible.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On November 19, 2020, Raver was pulled over after a Yellowstone County deputy observed him driving a black Ford F-150 confirmed to be a stolen vehicle. Both Raver and his passenger were arrested at the scene on unrelated outstanding warrants. The truck's owner, Stacie Grandpre (Grandpre), confirmed that she did not know Raver and had not given him permission to drive her truck. Grandpre gave the deputies consent to search the vehicle. Upon searching, deputies found several syringes and a spoon with a crystalline substance, as well as spools of copper wire and tools belonging to Montana Rail Link.

¶3 The State charged Raver by Information with six counts, including felony theft pursuant to § 45-6-301(1), MCA; felony theft pursuant to § 45-6-301(3), MCA; and four misdemeanors for possession of marijuana, possession of drug paraphernalia, driving while suspended, and theft of the copper wire. Pursuant to a plea agreement, Raver entered a no contest plea for the felony theft under § 45-6-301(3) (purposely or knowingly obtaining

2

control over property known to have been stolen by another) and misdemeanor theft of the copper wire, and the rest of the charges were dropped.

¶4 Following the theft, the truck underwent extensive repair and replacement work including several completely new components; of note, the back bumper was replaced despite Grandpre's original theft report stating that "the driver side bumper [was] tied with camo string." In her victim statement, Grandpre also noted the loss and replacement costs of her hunting gear which had been stolen with the truck. She characterized her truck as "ruined." In total, the State requested $17,470.36 in restitution, which accounted for Grandpre's hunting gear, car rentals, cleaning costs, and vehicle damage as paid by Grandpre's insurer. Raver contested this amount.

¶5 The District Court heard argument on the restitution issue at the May 17, 2023 sentencing hearing. In support of the restitution award, the State presented Cleve Shaw (Shaw), a State Farm Insurance claims specialist. On cross-examination, Shaw explained that State Farm found the damages to be related to the theft based on Grandpre's statement that the damages were not present prior to Raver's week-long possession. With regard to the replaced engine, Shaw explained:

> So it basically came down to, you know, the insured stated that the vehicle was running fine prior to the vehicle being stolen, and then when it was recovered, it had issues and when it went to the mechanic, the mechanic found damage in the engine that was apparently from the seven days while it was gone.

On redirect, Shaw reiterated State Farm's process for attributing the damage to the theft—the items were "inspected, either physically or through documented photos that were submitted to [State Farm] . . . and the investigation of the claim determined that the damage

3

to these items most likely happened during the theft" based on State Farm's lack of any reason to believe the damage did *not* occur during the theft. Grandpre was not present to testify to the truck's condition before or after the theft.

¶6      Raver, who happened to be a mechanic, also testified to his use of the truck and its condition. He averred that the truck "sat in [his] yard" and that despite being pulled over while driving, he had only taken it five blocks. He testified that nothing was wrong with the truck and that he would have fixed it if there had been problems. He denied any issues with the body of the truck other than the rear bumper being "tied up" and further denied any damage to the door handle, windshield, lights, or tonneau cover—all items that had been repaired post-theft and attributed to his use. Raver proposed paying $975 for cleaning and rental costs.[1]

¶7      The District Court ordered the State's full requested restitution. It found that there was "a reasonable and causative connection between the damage to that vehicle, your participation in the theft and then use of that vehicle." Regarding the laundry list of vehicle repairs, the District Court stated:

> I get it, it's an old truck, I get it, the truck had issues. But you know what, the truck was drivable, and the truck was functioning before you had it. And then what we hear from the insurance representative, is that when you were done with it, they had to replace all kinds of parts. And now you are arguing, well, I didn't do that damage, when I had it stolen, and I was using drugs and I was running around the community stealing copper from Montana Rail Link, I didn't do any damage to the vehicle.

---

[1] On appeal, Raver concedes that the value of the stolen hunting gear should also be recovered as restitution. Thus, he now alleges $2,734.99 is the appropriate amount, accounting for the hunting gear, rental car expenses, and cleaning costs.

4

Raver appeals the amount of restitution based on an asserted lack of causation.

## STANDARD OF REVIEW

¶8 We review criminal restitution orders for compliance with §§ 46-18-241 through -249, MCA. *State v. Cole*, 2020 MT 259, ¶ 9, 401 Mont. 502, 474 P.3d 323; *State v. Pierre*, 2020 MT 160, ¶ 10, 400 Mont. 283, 466 P.3d 494. Related conclusions and applications of law are reviewed de novo for correctness, and related findings of fact are reviewed for clear error. *Cole*, ¶ 9. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made. *State v. Cleveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 423 P.3d 1074. "Substantial evidence 'is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance.'" *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841 (quoting *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332).

## DISCUSSION

¶9 *Whether the District Court erred in awarding restitution based on an insurer's testimony that the contested damage was attributable to the defendant's theft and the District Court concluded that the defendant's conflicting testimony was not credible.*

¶10 Raver argues that the State failed to meet its burden of proof to show that he caused all of the attributed truck damage. He asserts that Grandpre's victim statement was overly vague and that State Farm's investigation was insufficient, and that the District Court erred by finding only "a reasonable and causative connection" as opposed to finding causation

by a preponderance of the evidence. Alternatively, Raver argues that the restitution award should be reduced by the cost of the new bumper because he proved that the bumper had damage prior to the theft.

¶11 Upon criminal sentencing, a district court must require the defendant to pay restitution in an amount "sufficient to fully compensate victims for all pecuniary loss substantiated by record evidence to have been caused by the defendant's criminal conduct." *Pierre*, ¶ 12 (citing §§ 46-18-201(5), -241(1), and -243(1), MCA). This restitution obligation is limited to "pecuniary victim losses he or she has agreed to pay or that are directly or indirectly caused by an offense he or she committed or is criminally accountable." *Pierre*, ¶ 12. The required causation can be found "between an offender's admitted or adjudicated criminal conduct and the asserted victim loss, upon an admission, by implication from proof of the elements of the charged offense, upon victim affidavits included with a PSI, or upon other evidence presented at or incident to sentencing." *Pierre*, ¶ 13. Because restitution is a civil remedy defined by those damages that would be available in a civil loss, "there must be a preponderance of the evidence supporting the restitution award." *Aragon*, ¶ 16.

¶12 Raver likens his case to *Aragon*, *Pierre*, and *Cole*, all cases in which we found insufficient causation between the defendant's criminal conduct and the restitution award. Each is distinguishable from the basic credibility determination that supports the District Court's causation conclusion here. In *Aragon*, the defendant drove his car into the victim's garage and the victim received a restitution award that included the cost of repainting the entire home to match the repainted garage. *Aragon*, ¶¶ 4, 6. The defendant contested that

6

it was necessary to repaint the rest of the home. The defendant and the victim presented equally credible conflicting estimates for the repair work, and we reversed, finding that there was not substantial evidence to support the higher amount because "[a] reasonable mind could not conclude, solely from the two estimates, that one was more appropriate than the other." *Aragon*, ¶ 19.

¶13    In *Pierre*, the defendant was ordered to pay restitution jointly and severally with co-defendants who had burglarized the main home, guest house, and outbuilding of a property, causing $43,294.46 in pecuniary loss. *Pierre*, ¶ 9. The defendant pleaded guilty only to burgling the guest house. *Pierre*, ¶ 6. He admitted to stealing collectible dolls from the guest house, but the State otherwise had "no non-speculative evidence indicating that Pierre had in fact entered the main house, otherwise participated in any of the main house burglaries or thefts, or took any affirmative act to aid or abet the others in the commission of those burglaries and thefts." *Pierre*, ¶¶ 5, 8. We reversed based on the complete lack of evidence "sufficient to prove even an indirect causal connection" between the defendant's criminal conduct and the pecuniary loss arising from burglary to the main house. *Pierre*, ¶ 22.

¶14    Finally, in *Cole*, the defendant pleaded guilty to possession of dangerous drugs and drug paraphernalia after law enforcement discovered methamphetamine and a glass pipe in a bedroom that he resided in at least part-time. *Cole*, ¶ 5. Additional defendants residing in the same apartment were also criminally charged. *Cole*, ¶ 6. Cole pleaded guilty only to the drugs that were found in his room, but the district court ordered Cole to pay $31,902.99 in remediation costs—an amount that covered the entire apartment, not only

7

Cole's room. *Cole*, ¶¶ 6-8. Again, we reversed, finding that the specific criminal conduct for which the defendant pleaded guilty was not causally related to the damage done to the rest of the apartment. *Cole*, ¶¶ 16-17.

¶15 Here, Raver's crime is more than sufficiently causally connected to the damage. He admitted to entering, using, and possessing the vehicle for a week; he used and possessed the entire vehicle; and he makes no supported argument that the damage was caused by someone else during the time it was stolen. Raver testified that he neither observed nor caused any damage, but the District Court did not find his testimony credible. This is not the situation in *Aragon*, where the court had two pieces of equally credible conflicting evidence without any other context regarding the discrepancy. This is not *Pierre*, where the record was entirely devoid of evidence to suggest that the defendant had even indirectly caused pecuniary losses arising from the main house burglary. This is not *Cole*, where the defendant's plea was specifically spatially limited to only damages connected to his room. Rather, the District Court was presented with testimony from State Farm and Grandpre's victim statement that it deemed credible and conflicting testimony from Raver that it deemed not credible. State Farm testified that it investigated normally and concluded that all of the documented damage occurred while the truck was in Raver's possession. Based on these facts, Grandpre's victim statement, and accompanying documentation, the District Court correctly found that there was a preponderance of the evidence supporting the causal relationship between Raver's theft and the damage to Grandpre's truck, even if it did not use these precise words.

¶16    The implication of Raver's argument that State Farm's investigation was "poor" is a thinly veiled accusation that Grandpre committed insurance fraud and received car repairs that were necessary regardless of the theft based on the age and mileage of the car. The inner workings of State Farm's investigation are not for this Court to opine. What is essential here is that State Farm presented facts of its investigation and conclusions that the District Court found credible and that showed, by a preponderance of the evidence, that the damage to Grandpre's truck was directly or indirectly caused by Raver's theft.

¶17    We also decline to sever the matter of the rear bumper. Raver's alleged proof that the bumper was irreparably damaged before is a photograph referenced in the hearing but not part of the record before this Court. Without that photograph, we have only Grandpre's statement as part of the initial police report that the bumper was "tied with camo string." This is insufficient evidence to refute State Farm's conclusion that the bumper was not in an irreparable state before the theft and was in an irreparable state afterwards.

## CONCLUSION

¶18    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE