FILED

10/13/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0338

DA 19-0338

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 259

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TYLER JEFFREY COLE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC 17-387
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robin A. Meguire, Attorney at Law, Great Falls, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Jeffrey M. Doud, Assistant
Attorney General, Helena, Montana

      Leo J. Gallagher, Lewis and Clark County Attorney, Katie Jerstad, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  September 9, 2020

Decided:  October 13, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Tyler Jeffrey Cole (Cole) appeals from the Judgment issued April 18, 2019, by the First Judicial District Court, Lewis and Clark County, ordering Cole to pay $31,902.99 in restitution.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erroneously required Cole to pay restitution for losses resulting from offenses committed by another absent evidence of criminal accountability or a causal connection between his offense and those losses.*

¶3 We reverse and remand with instructions to strike the restitution award.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On September 26, 2017, Cole was charged with Count I—Criminal Possession of Dangerous Drugs (CPDD), a felony; Count II—Criminal Possession of Drug Paraphernalia (CPDP), a misdemeanor; and Count III—Accountability for Drug Possession, a felony. These offenses all stemmed from a search of co-defendant Anneka Smith's apartment pursuant to a search warrant.

¶5 Upon executing the search warrant, officers found four people in the apartment: Cole and his girlfriend Smith and another male and female. Cole and Smith were in Smith's bedroom—the middle bedroom—and the other two individuals were in the right bedroom. No one was in the left bedroom which law enforcement believed to be Cole's

2

room since they found documents in that room with his name on them.[1]  Law enforcement located a pink mirror with residue on it, a small Sucrets container with residue on it, and a glass pipe in the left bedroom.  They located other drugs and drug-related items in other areas of the apartment.

¶6      On August 28, 2018, the day before trial, pursuant to a plea agreement, Cole pled guilty to Counts I and II—related to the residue and the glass pipe seized from the left bedroom—and Count III, Accountability for Drug Possession, was dismissed.  In clarification of Cole's guilty plea to the CPDD and CPDP offenses, the prosecutor stated:

> I want to be clear that there were multiple residents in the apartment, and we've only charged him with what we thought was in his bedroom, or at least we're dismissing the third count, would have been accountability for the other drugs in the other bedrooms.  We are intending to proceed against codefendants with what was in their bedrooms . . . Mr. Cole is only taking responsibility for what was in his.

The District Court then further clarified with Cole:

> THE COURT: All right.  Because there is a charge here.  The State's going to move to dismiss the other count here of accountability to criminal possession, correct?
>
> [PROSECUTOR]: Correct, your Honor.  So moved.
>
> THE COURT: So we're only dealing with the drugs that were found in your room, do you understand that?
>
> [COLE]: Yes.

---

[1] There is conflicting information as to Cole's tenancy at the apartment.  The apartment was leased solely by Smith.  Cole asserted he did not reside at the apartment but did stay there about once every two weeks.  Despite his contention that he did not reside on a full-time basis at the apartment, Cole ultimately pled guilty to possessing the residue and paraphernalia located in the left bedroom, at least tacitly agreeing to some control over that bedroom.

¶7    A little over a month later, Cole sought to withdraw his guilty plea—in part indicating he had pled guilty to shield Smith. At the hearing on his motion, the State argued against permitting withdrawal of his plea, emphasizing Cole was only taking responsibility for the residue and pipe associated with him:

> In this instance, I don't see how his appearing and changing his plea and taking responsibility for the drugs that were found in the room that was associated with him, how that would take any of the heat away from his codefendant, Ms. Smith, whose charges stem from evidence found in what was thought to be her room. Some other location in the same apartment.

The District Court denied Cole's motion to withdraw his guilty plea.

¶8    At sentencing, the parties disagreed as to restitution for costs associated with remediating the apartment from methamphetamine contamination.[2] The State urged the court to impose restitution of the entire renovation expense. Cole's counsel objected to imposition of any restitution, alleging there was insufficient causation between the asserted renovation expenses and the offenses to which Cole pled. Cole's counsel further argued restitution is only recoverable to the extent it could be recovered in a civil suit, arguing that if the property management company were to sue Cole and allege he smoked methamphetamine[3] in the apartment, it would be unable to establish by a preponderance of

---

[2] Upon receiving notification from law enforcement of charges related to methamphetamine, the apartment's property management company hired another company to determine the presence of methamphetamine in the apartment and the need for decontamination. That company reportedly tested three sites—the furnace cold air intake, the microwave vent intake, and the master bedroom window frame. From that limited testing, the company concluded it necessary to undertake a comprehensive decontamination which included replacing fixtures, appliances, and flooring, along with cleaning, and painting. The total renovation cost $31,902.99.

[3] Cole pled guilty only to possessing the methamphetamine residue, not smoking methamphetamine in the apartment.

the evidence a causal link between that and the extensive damage asserted.[4]  At the conclusion of the hearing, the District Court imposed the $31,902.99 restitution requested by the State.  Cole appeals.  Additional facts may be discussed as necessary below.

**STANDARD OF REVIEW**

¶9     We review criminal restitution orders for compliance with §§ 46-18-241 through -249, MCA.  *State v. Pierre*, 2020 MT 160, ¶ 10, 400 Mont. 283, 466 P.3d 494. We review related conclusions and applications of law de novo for correctness and related findings of fact only for clear error.  Findings of fact are clearly erroneous only if not supported by substantial evidence, the lower court clearly misapprehended the effect of the evidence, or we are firmly convinced upon our review of the record that the court was otherwise mistaken.  *Pierre*, ¶ 10 (citations omitted).

**DISCUSSION**

¶10    *Whether the District Court erroneously required Cole to pay restitution for losses resulting from offenses committed by another absent evidence of criminal accountability or a causal connection between his offense and those losses.*

¶11    Our recent opinion in *State v. Pierre* set forth the legal framework for an award of restitution.  That framework bears repeating here:

> Upon sentencing in a criminal case, courts must require defendants to pay restitution in an amount sufficient to fully compensate victims for all pecuniary loss substantiated by record evidence to have been caused by the defendant's criminal conduct. Sections 46-18-201(5), -241(1), and -243(1),

---

[4] Counsel specifically pointed out there was no evidence there was no contamination prior to Cole staying at the apartment, no evidence as to when the contamination occurred, no expert testimony to explain the need for the renovation: "There's no explanation for why you'd replace a stove and a fridge and rip out carpeting and rip out floors.  The very window that they tested the meth, the window frame, they didn't replace that window frame, and that's where the actual contamination was.  They just washed it."

MCA. *See also, e.g., State v. Brownback*, 2010 MT 96, ¶¶ 20-23 and 25, 356 Mont. 190, 232 P.3d 385 (direct or indirect "causal relation between the offender's criminal conduct and [asserted] pecuniary loss is the touchstone for determining" entitlement to restitution); *State v. Breeding*, 2008 MT 162, ¶¶ 13 and 18-19, 343 Mont. 323, 184 P.3d 313 (noting "causal standard" embodied in § 46-18-243(1)-(2), MCA). Paraphrased as a causation standard, an offender's statutory restitution obligation is expressly limited, as pertinent, to loss suffered "*as a result of the commission of an offense*" and constituting substantiated "special damages . . . recover[able] against the offender in a civil action *arising out of the facts or events constituting the offender's criminal activities*" or the "replacement cost of property taken, destroyed, harmed, or otherwise devalued *as a result of the offender's criminal conduct*." *See* §§ 46-18-241(1), -243(1)(a)-(b), (2)(a)(i)(A), and (2)(a)(ii), MCA (defining recoverable "pecuniary loss" and referencing pecuniary loss sustained by statutorily defined "victims"—emphasis added). Consequently, an offender is responsible only for pecuniary victim losses he or she has agreed to pay or that are directly or indirectly caused by an offense he or she committed or is criminally accountable. *State v. Simpson*, 2014 MT 175, ¶ 14, 375 Mont. 393, 328 P.3d 1144 (citing *Breeding*, ¶ 19); *In re B.W.*, 2014 MT 27, ¶¶ 18-21, 23-24 and 29-30, 373 Mont. 409, 318 P.3d 682; *Brownback*, ¶¶ 20-23 and 25; *Breeding*, ¶¶ 13, 16, and 19-20; *State v. Beavers*, 2000 MT 145, ¶¶ 10-12, 300 Mont. 49, 3 P.3d 614, *overruled on other grounds by State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978. *Accord City of Billings v. Edward*, 2012 MT 186, ¶¶ 27-30, 366 Mont. 107, 285 P.3d 523.

The sentencing court may find the requisite causal nexus for restitution, between an offender's admitted or adjudicated criminal conduct and the asserted victim loss, upon an admission, by implication from proof of the elements of the charged offense, upon victim affidavits included with a PSI, or upon other evidence presented at or incident to sentencing. *See* §§ 46-18-241(1), -242(1)(b), and (2), MCA; *Simpson*, ¶ 14; [*In re*] *B.W.*, ¶¶ 19-23; *Edward*, ¶¶ 29-30. The State has the burden of proving the requisite causal connection or criminal accountability for restitution in any event. *See also* [*State v.*] *Aragon*, [2014 MT 89,] ¶ 16[, 374 Mont. 391, 321 P.3d 841]; [*In re*] *B.W.*, ¶¶ 19-23; *Breeding*, ¶ 18; *Beavers*, ¶ 12.

*Pierre*, ¶¶ 12-13 (emphasis in original). Pursuant to § 46-18-243(1), MCA, "pecuniary loss" includes "all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of

the facts or events constituting the offender's criminal activities" and "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243, MCA, in essence, engrafts a civil remedy into a criminal case. *Aragon*, ¶ 16.

¶12 First, Cole asserts, based on our holding in *State v. Erickson*, 2005 MT 276, ¶ 36, 329 Mont. 192, 124 P.3d 119, that as there is no identifiable victim of a CPDD offense, a defendant cannot be ordered to pay restitution as part of his sentence. Next, Cole asserts he pled guilty to simple possession of methamphetamine residue and a glass pipe and the Accountability for Drug Possession offense was dismissed. He contends there is insufficient causal connection between the criminal conduct to which he admitted and pled and the damage asserted to the apartment. Contrarily, the State asserts there is a sufficient causal connection between Cole's criminal conduct and the damage to the apartment, as Cole admitted to possession of a glass pipe, typically used to smoke methamphetamine, and the apartment where Cole's methamphetamine residue and methamphetamine-smoking paraphernalia was found was contaminated with methamphetamine residue. We are not persuaded by the State's argument.

¶13 As Cole has asserted *Erickson* provides no restitution can be ordered in sentencing an offender for the offense of CPDD, we take this opportunity to clarify *Erickson*. CPDD is a victimless offense which, without more than mere admission to its elements, would preclude imposition of restitution. There may, however, be times where imposition of restitution is appropriate in sentencing for a CPDD offense—such as where a defendant

7

agrees via plea agreement to be responsible for other drug-related damages or loss or the State is able to prove accountability for other drug related damage or loss stemming from the CPDD offense. These types of situations were not present in *Erickson* and, as such, were not addressed therein and they are not present in this case either.

¶14 We find this case to be quite similar to *In re B.W*, *Breeding*, and *Pierre.* In *In re B.W.* a youth admitted to the offense of criminal mischief by participating in two nights of an 11-day vandalism spree. The youth admitted his participation over the two nights furthered a common scheme. The court ordered B.W. to pay $78,702.09 in restitution which was the aggregate pecuniary loss sustained by all victims of the common scheme. *In re B.W.*, ¶ 8. On appeal, we determined the restitution ordered was in excess of the loss caused by the vandalism in which B.W. was involved. *See In re B.W.*, ¶ 16. While restitution for loss caused by another does not necessarily require a charge, admission, or verdict of criminal accountability, in the absence of such, the State must prove beyond a reasonable doubt the asserted criminal accountability. *In re B.W.*, ¶ 21. The State failed to prove B.W. was accountable for the criminal conduct of others on the nights he did not participate and, as such, could not be held jointly and severally liable for the aggregate pecuniary loss. The youth court therefore erred in ordering B.W. to pay restitution for the pecuniary loss for vandalism committed by others on the nine nights B.W. did not participate. *In re B.W.*, ¶ 23.

¶15 *Breeding* involved a situation where the defendant, not involved in the initial motor vehicle theft, pled guilty to related after-the-fact criminal conduct that contributed to the

total loss sustained by the vehicle owner.[5] Even though the district court recognized Breeding did not participate in the initial theft and damage of the Jeep when it was driven into the snow-covered haystack, it concluded he was jointly and severally liable with the co-defendant for all damage to the vehicle as he participated in driving the vehicle to California and knew it was stolen when doing so. *Breeding*, ¶ 17. On appeal, we determined the district court lacked authority to impose restitution for damage to the Jeep which did not occur as a result of Breeding's conduct—"while an offender is liable for restitution for offenses to which he has admitted, been found guilty, or agreed to pay restitution, the only offense Breeding has admitted, been found guilty, and agreed to pay restitution is the theft that occurred when he participated in driving the Jeep to California." *Breeding*, ¶ 19 (internal citations omitted). We determined there was no statutory authority for imputing to Breeding the damage caused in the course of Seghetti's theft of the vehicle and driving it into the haystack as a defendant may not be ordered to pay restitution in excess of the damages caused by his criminal conduct. *Breeding*, ¶ 19.

¶16 From our review of the record, in conjunction with *In re B.W.*, *Breeding*, and *Pierre*, we conclude there was insufficient evidence of a causal connection between the criminal

---

[5] Ryan Seghetti initially stole the vehicle—a Jeep. He and another individual then took the vehicle off-roading and hit a snow-covered haystack causing significant body damage to the vehicle. Seghetti later encountered Breeding and suggested they drive the vehicle to West Yellowstone or Big Sky. Breeding instead suggested they drive it to California, which they did. *Breeding*, ¶¶ 3-4. Based on his affirmative suggestion and participation with his co-defendant in their subsequent shared driving of the vehicle to California in conjunction with a plea agreement, Breeding pled guilty to theft. At sentencing he argued a defendant may not be ordered to pay restitution in excess of the damages caused by his criminal conduct. *Breeding*, ¶ 5.

conduct to which Cole admitted and pled and the apartment renovation expenses asserted. Cole admitted to possessing methamphetamine and a glass pipe and pled guilty to CPDD and CPDP. There was no evidence as to what level or duration of methamphetamine smoking would lead to the contamination found, the basis for concluding complete renovation was required to remediate the contamination, and no expert or informed evidence as to the necessity to replace appliances, carpeting, and fixtures rather than clean them as occurred with the window frame. There is no evidence Cole was operating any type of methamphetamine lab. Even more compelling, there was no evidence that Cole had actually smoked methamphetamine in the apartment. There was no evidence the criminal conduct to which Cole admitted and pled caused any damage to the apartment. Here, the State failed to establish a causal link between Cole's admitted possession of methamphetamine and the extensive rehabilitation claimed.

¶17 Further, the restitution imposed is inconsistent with the State's representations made at the hearings referenced earlier that Cole was only being charged with and held responsible for the items located in his room. The Accountability for Drug Possession offense was dismissed. The State failed to prove beyond a reasonable doubt that Cole was in any way accountable for Smith's criminal conduct. Here, it is too great a leap to conclude that since Cole possessed methamphetamine and a glass pipe, that he caused over $30,000 of damage to the apartment. Based on the requirement of *In re B.W.*, *Breeding*, and *Pierre* that a defendant may not be ordered to pay restitution in excess of the damages caused by his criminal conduct, the District Court erred in ordering Cole to pay restitution.

10

## CONCLUSION

¶18 We reverse and remand to the District Court to strike the restitution award imposed on Cole.

¶19 Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR