FILED

06/23/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0706

DA 24-0706

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 129

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TRISHA LYNN PETERSON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DC-24-009
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jacquelyn M. Hughes, Hughes Law, P.L.L.C., Billings, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

      Brett Irigoin, Dawson County Attorney, Cody Lensing, Deputy
County Attorney, Glendive, Montana

Submitted on Briefs: June 4, 2026

Decided: June 23, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Trisha Lynn Peterson appeals the Seventh Judicial District Court's restitution order following her plea of guilty to criminal mischief and theft by accountability. As part of her plea, Peterson agreed to pay jointly and severally with her co-defendant, Robert Taylor, all restitution for a dog-wash machine that she damaged during the course of her offenses. Peterson challenges the District Court's award of the replacement value of a new dog-wash machine instead of its repair cost or, alternatively, the market value of the dog-wash machine. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On January 22, 2024, the Glendive Police Department was dispatched to Get 'er Clean Car Wash after its owner, Jeffery Guetter, discovered damage to one of his dog-wash machines. Guetter offered police surveillance footage that showed a masked male and female arrive in a four-door diesel truck and use a sledgehammer to break into the dog-wash machine. Following investigation, police obtained and executed a search warrant on Peterson's truck, in which they found prybars, hammers, screwdrivers, and numerous keys for vending machines. The State charged Peterson on February 22, 2024, with felony theft by accountability, felony criminal mischief, and misdemeanor possession of a burglary tool. In June, Peterson pleaded guilty to felony theft by accountability and felony criminal mischief. She agreed to pay "all restitution to Get 'er Clean Car Wash." The State dismissed the misdemeanor possession charge. Prior to sentencing, Probation and Parole filed a presentence investigation report. Attached to the report was Guetter's affidavit swearing that the replacement value of the dog-wash machine was $23,950.

Peterson informed the court that she planned to challenge the amount of restitution for the dog-wash machine.

¶3 The court set a sentencing and restitution hearing for October 1, 2024. At the hearing, Guetter testified that Peterson and Taylor used a sledgehammer to break the hinges and face of the dog-wash machine, damaging its electronics. They forced the machine's door open with a prybar, both breaking the lock and bending the door. Taylor and Peterson also removed the bill acceptor from the machine and tore it apart.

¶4 Guetter stated that he bought the dog-wash machine new in 2020 for around $17,000. He claimed that before Peterson and Taylor damaged the machine, it operated "flawlessly." He estimated that similar machines, with proper care and maintenance, could function for twenty to twenty-five years. After the break-in, Guetter replaced several of the electronics, but the bill acceptor continued to malfunction. He fixed the lock and hinges on the door, but the door would not properly close, leaving it susceptible to prying open again. Guetter searched for and ordered replacement parts and then troubleshot the machine with those parts. Guetter attested that the machine was inoperable sixty to seventy percent of the time.[1]

¶5 Guetter contacted All Paws Pet Wash, the manufacturer of the dog-wash machine. He testified that All Paws advised him that it was unable to individually supply all the necessary replacement parts and that it would be cheaper to buy a new dog-wash machine. All Paws informed Guetter that it no longer made the damaged model, and a comparable

---

[1] Guetter did not ask for lost income for the periods when the damaged dog-wash machine was inoperable.

2024 model cost $21,050. Unlike the damaged model, the 2024 model did not have a fold-up dog wash bay, a feature Guetter felt made the 2024 model inferior in form.

¶6 On cross-examination, Guetter acknowledged that he was unaware of several of the replacement parts' cost, that he had not contacted the coin machine's manufacturer for estimated costs to replace that part, a welder to replace the damaged door, or an electrician or electronic repairman to address the broken electronic parts. Guetter also did not investigate the depreciation of the original dog-wash machine before it was damaged.

¶7 Before imposing restitution, the court considered Peterson's debts of $12,000 (repayment for a vehicle and phone) and assets (a $15,000 vehicle). The court noted that Peterson was employable and earned $1,400 a month before arrest. The court also considered Peterson's age, thirty-three, and that she appeared to be in good health. The District Court sentenced Peterson "to pay restitution, jointly and severally, with [Taylor], in the amount of $21,050"[2] to "Jeffery Guetter of Get 'er Clean Car Wash."[3]

## STANDARDS OF REVIEW

¶8 We review criminal restitution for a court's compliance with §§ 46-18-241 through -249, MCA. *State v. Cole*, 2020 MT 259, ¶ 9, 401 Mont. 502, 474 P.3d 323. We review the court's conclusions and applications of law de novo and its findings of fact for clear error. *Cole*, ¶ 9. A finding of fact is clearly erroneous if it is unsupported by substantial

---

[2] In the District Court's judgment and order suspending sentence, the court states the restitution amount to be $20,050. On appeal, neither party challenges the discrepancies between the court's oral and written order, agreeing that the amount of restitution at issue on appeal is $21,050.

[3] Though it is unclear from the record whether the car wash was a separate business entity, the parties do not dispute and we do not address the proper victim to whom restitution should be paid.

4

evidence, the court misapprehended the effect of the evidence, or this Court, upon reviewing the record, is firmly convinced that a mistake has been made. *Cole*, ¶ 9. Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *State v. Raver*, 2025 MT 51, ¶ 8, 421 Mont. 65, 565 P.3d 834 (citations omitted). "The credibility of witnesses and the weight to be given their testimony are determined by the trier of fact, whose resolution of disputed questions of fact and credibility will not be disturbed on appeal." *State v. Simpson*, 2014 MT 175, ¶ 18, 375 Mont. 393, 328 P.3d 1144 (citations omitted). A finding of fact is not clearly erroneous simply because record evidence may point to a different conclusion. *State v. Lally*, 2008 MT 452, ¶ 22, 348 Mont. 59, 199 P.3d 818.

**DISCUSSION**

¶9 Title 46, Chapter 18, MCA, governs a sentencing court's imposition of restitution. *State v. McMaster*, 2008 MT 268, ¶ 30, 345 Mont. 172, 190 P.3d 302. In addition to any other penalties, the court must sentence an offender to pay "full restitution" for "pecuniary loss" caused by the defendant during the commission of the proven or admitted offense. Sections 46-18-201(5), -241, -243, MCA; *State v. Pierre*, 2020 MT 160, ¶ 12, 400 Mont. 283, 466 P.3d 494 (citation omitted). A court may sentence an offender to pay any "pecuniary loss" defined in § 46-18-243(1), MCA. *State v. Brewer*, 1999 MT 269, ¶ 12, 296 Mont. 453, 989 P.2d 407.

¶10 Relevant here, § 46-18-243(1), MCA, defines "pecuniary loss" as:

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services;

(b) the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct . . . .

¶11    In reaching its conclusion, the District Court considered that Guetter attempted to fix the lock and hinges on the machine's door, spent thirty to forty hours searching for and ordering replacement parts, troubleshot those parts, and contacted the manufacturer, All Paws.  The court noted that despite Guetter's repeated attempts to repair a once flawlessly operating dog-wash machine, it remained inoperable most of the time.  The court found that Guetter's experience and conversation with All Paws supported his testimony that a new machine was necessary to replace the original, damaged machine.  The court did not impose the entirety of the State's $23,950 request, reasoning that the State did not plead with specificity the alleged add-ons that Guetter installed on the damaged dog-wash machine.  Based on Guetter's testimony and the presentence investigation report, the District Court found the "full replacement cost" of the damaged dog-wash machine to be the cost for Guetter to acquire a new machine.

¶12    Peterson relies on the reference in § 46-18-243(1)(a), MCA, to damages recoverable "in a civil action" when determining the appropriate amount of restitution.  *See State v. Barrick*, 2015 MT 94, ¶ 21, 378 Mont. 441, 347 P.3d 241.  Citing *Spackman v. Ralph M.*

6

*Parsons Co.*, 147 Mont. 500, 414 P.2d 918 (1966), Peterson contends that under civil remedies, the plaintiff may not recover more than the cost of the repairs when those costs are less than the diminution in the market value of the property before and after injury. She suggests that the District Court erred because it did not apply this standard and that if it had, the court would have found that the State failed to substantiate its claim to the full replacement cost of the dog-wash machine. She adds that the State did not sufficiently demonstrate that it met the narrow circumstances in which a court may award the full replacement cost for converted property. *See Bos v. Dolojak*, 167 Mont. 1, 534 P.2d 1258 (1975).

¶13 When interpreting a statute, we are guided first by its plain language. *Barrick*, ¶ 17. "We will not interpret the statute further if the language is clear and unambiguous." *Barrick*, ¶ 17. In *Barrick*, this Court interpreted § 46-18-243(1)(a), MCA, to mean that restitution orders are "clearly contingent upon the victim being able to recover the claimed damages in a civil action." *State v. Lowry*, 2019 MT 191, ¶ 11, 397 Mont. 11, 446 P.3d 1148 (quoting *Barrick*, ¶ 22). As a consequence, we routinely consider tort and contract law to determine whether a restitution order is appropriate under § 46-18-243(1)(a), MCA. *Barrick*, ¶ 21 (quoting *State v. Kalal*, 2009 MT 103, ¶ 9, 350 Mont. 128, 204 P.3d 1240).

¶14 In 2003, the Legislature amended § 46-18-243(1), MCA. Prior to the amendment, § 46-18-243(1)(a), MCA, included among "special damages that a person could recover in a civil action" "the money equivalent of loss resulting from property taken, destroyed, broken or otherwise harmed." The amendment removed that phrase from subsection (1)(a). In its place, the Legislature added a new subsection (b), defining as a discrete

7

category of pecuniary loss "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243(1)(b), MCA (2003 Mont. Laws ch. 272, § 5).

¶15 The amendment responded to this Court's decision in *State v. Pritchett*, 2000 MT 261, 302 Mont. 1, 11 P.3d 539. There, the district court sentenced Pritchett to pay the full replacement cost of a garage destroyed by fire instead of its market value. *Pritchett*, ¶¶ 22-23. Applying the civil conversion statute, § 27-1-320(1), MCA, we held, "Where personal property is converted, restitution must be based on the market value of the goods converted," and thus "the [d]istrict [c]ourt, in using the replacement cost of items destroyed, used an incorrect measure to determine the amount of Pritchett's restitution." *Pritchett*, ¶ 24. The 2003 amendments were passed expressly to "allow victims to be fully reimbursed for their loss." S. Jud. Comm., *Major Points in HB 220 Restitution*, Exh. 1, 58th Reg. Sess. 2 (Mont. 2003), https://perma.cc/KDF5-BBNG. Prior to the amendment, we required criminal restitution for converted property to be based on the ascertainable market value at the time of conversion. *In re T.M.R.*, 2006 MT 246, ¶ 19, 334 Mont. 64, 144 P.3d 809 (citing *Pritchett*, ¶ 24; *State v. Dunkerson*, 2003 MT 243, ¶¶ 26, 29, 317 Mont. 228, 76 P.3d 1085; *State v. Heath*, 2004 MT 126, ¶ 52, 321 Mont. 280, 90 P.3d 426). We recognized in *In re T.M.R.* that the 2003 amendment permits courts to sentence adult offenders to the full replacement cost of converted property. *In re T.M.R.*, ¶¶ 15-19 (contrasting juvenile sentencing statute applicable in that case).

¶16 In *State v. Simpson*, the victim and an independent contractor testified to the estimated amount of gravel and cost for repairing the road the defendant had damaged.

*Simpson*, ¶ 23. The defendant argued that he should not be responsible for the cost of "upgrading what was essentially a dirt path into an improved gravel road" and that the restitution order would provide a windfall to the victim by improving the road to a condition better than before the damage occurred. *Simpson*, ¶ 23 (internal quotations omitted). We noted that § 46-18-243(1)(b), MCA, granted the sentencing court the authority to impose the full replacement cost. *Simpson*, ¶ 23. We held that substantial evidence supported the cost of repairing the road. *Simpson*, ¶ 23.

¶17 The Dissent distinguishes *Simpson* on the facts, pointing out that the evidence there showed that in order to repair the road that Simpson damaged, "you have to replace that to where it will stand back up." Dissent, ¶ 44 n.2 (quoting *Simpson*, ¶ 23). The Dissent overlooks our holding, however, that Simpson "*did not introduce contrary evidence* of what would constitute a reasonable amount of repair." *Simpson*, ¶ 23 (emphasis added).[4] We pointed out that "[t]he State is required to submit evidence of only a 'causal relationship' between an offense and damage before a defendant may be charged with paying restitution for the damage." *Simpson*, ¶ 23 (citation omitted). Because the evidence showed that Simpson's use of a flat-bed trailer on the property caused damage to the road and there was sufficient evidence to support the full $9,000 repair cost, the court did not err. *Simpson*, ¶ 23.

---

[4] The record showed that Simpson offered only his own opinion that it was not necessary to use so much gravel to repair the road and that his vision "would be [to] run a grader across it and see what you could knock down and see how it comes up after that . . . and fill in the holes."

9

¶18 Peterson suggests that the cost of repairing the damaged machine or, alternatively, a used dog-wash machine is undoubtedly less than the cost of a new 2024 dog-wash machine. Essentially, Peterson contends that, at most, Guetter is entitled to the market value of the machine prior to its damage. *See Dunkerson*, ¶¶ 26-27 ("Generally, the prices offered by merchants for their merchandise are market values."). She argues that because the State provided insufficient evidence on the value of a used dog-wash machine or the cost of repair, Guetter will obtain a windfall by receiving the value of a new 2024 dog-wash machine, which is in obviously better condition than a used machine. Like the defendant in *Simpson*, Peterson ignores § 46-18-243(1)(b), MCA's plain language, providing the authority to require her to pay "*the full replacement cost* of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." (Emphasis added.) Market value was not the measure. And like in *Simpson*, if Peterson claimed that the damaged machine could be fully replaced at a lower cost than buying a new one, it was incumbent on her to offer contrary evidence.

¶19 The Dissent relies heavily on *State v. Hill*, 2016 MT 219, 384 Mont. 486, 380 P.3d 768, suggesting that it stands for the principle that a victim is not entitled to the full cost of a new version just because the damaged property is out of production. Dissent, ¶ 44. In *Hill*, both parties presented evidence for the replacement cost of a 1995 Pontiac Bonneville, the value of which was ascertainable in Blue Book and a NADA Guide. *Hill*, ¶¶ 4-5. The Court found that the defendant's Blue Book evidence was insufficient to support his estimated replacement cost because it "did not relate the values given to a particular vehicle condition." *Hill*, ¶ 14. We held that a replacement cost should place the victim in the exact

10

position they would be when "searching for a replacement," which was better substantiated by the victim's reliance on the NADA Guide. *Hill*, ¶ 14. Faced with the two estimates for replacement cost, the District Court did not clearly err when it accepted the victim's proposed value. *Hill*, ¶ 15.

¶20 Unlike Hill, Peterson presented *no evidence* to support her claim that the replacement cost of the damaged machine was less than the cost of a 2024 model. The only analogies that can be drawn between *Hill* and this case are that both properties were used and were out of production before they were damaged. These facts do not change the controlling principles that guide our review of a court's restitution order.

¶21 The Rules of Evidence do not apply at a sentencing hearing. *State v. Coluccio*, 2009 MT 273, ¶ 40, 352 Mont. 122, 214 P.3d 1282, *overruled on other grounds by State v. Kirn*, 2012 MT 69, 364 Mont. 356, 274 P.3d 746. But there must be substantial evidence to support the amount of restitution. *Simpson*, ¶ 27. "Substantial evidence is evidence that a reasonable person might accept as adequate to support a conclusion; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Hill*, ¶ 8 (citing *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332). We have upheld restitution awards where the only record evidence was the victim's affidavit or testimony regarding the pecuniary loss. *Simpson*, ¶ 14 (citing *State v. Aragon*, 2014 MT 89, ¶ 14, 372 Mont. 391, 321 P.3d 841). The defendant has "the right to a sentence imposed based upon substantially correct information," *Coluccio*, ¶ 40 (citations omitted), and "the due process right to explain, argue, and rebut any information presented at sentencing," *Aragon*, ¶ 12 (internal quotations omitted; citations omitted). But when a defendant does

not offer contrary evidence, "the [d]istrict [c]ourt does not err in relying on a victim's estimates of loss." *Simpson*, ¶ 14 (citation omitted).

¶22 Guetter testified to his efforts at repair and said that All Paws informed him that because it no longer made the model that Peterson damaged, it would be cheaper for him to buy a new model instead of replacing parts and repairing the damaged machine piecemeal. The District Court found Guetter credible. Peterson challenged the State's evidence because Guetter did not supply receipts for completed repairs or estimates of the depreciated cost of a used dog-wash machine. "Nothing in the controlling restitution statutes . . . requires a court or a victim to substantiate a restitution calculation with documentation." *Simpson*, ¶ 14 (brackets omitted) (quoting *Aragon*, ¶ 12 (quoting *McMaster*, ¶ 29)); *see also* § 46-18-242, MCA. When actual losses are unascertainable, a victim still may recover pecuniary losses when those losses are "calculated by use of reasonable methods based on the best evidence available under the circumstances." *State v. Benoit*, 2002 MT 166, ¶ 29, 310 Mont. 449, 51 P.3d 495. Guetter's affidavit and testimony explaining what he had done to investigate and attempt repairs were sufficient evidence to support the court's finding that the "full replacement cost" of a new machine was the cost of a new model. *See* § 46-12-242(1)(b), MCA; *Simpson*, ¶ 14 (citing *Aragon*, ¶ 12 (quoting *McMaster*, ¶ 29)).

¶23 The District Court's finding was not based on "[a]ssumptions, ballpark figures from friends, and purely speculative calculation . . . ." *Coluccio*, ¶¶ 41-45 (holding that the following were insufficient to substantiate a victim's pecuniary losses: victim admitted to being "'at a loss' when calculating the counseling expenses"; victim's home repair

12

expenses were based on assumptions; calculations of her husband's income was based on "potential" earning; and the victim admitted to having a complete lack of knowledge for how her attorney-friend calculated lost income). The District Court considered Guetter's years of experience working on similar machines, his efforts to repair the damaged machine, and the advice he received from the owner of All Paws when it determined that Guetter's calculation that the full replacement cost of the damaged machine was the cost of a 2024 dog-wash machine.

¶24 Here again, Peterson did not present evidence contradicting Guetter's claims that the damaged machine could not be reasonably repaired for less than the replacement cost. Peterson argues that receipts for the purchased replacement parts should be available; the possibility that other replacement parts may be readily accessible; and the prospect that Guetter could have found a used dog-wash machine or investigated its depreciated value. Though she cross-examined Guetter on these points, Peterson offered no evidence to show that the machine in fact could be restored to its condition before the vandalism at a cost less than full replacement. Peterson's speculation does not defeat the substantial evidence provided by Guetter's testimony and affidavit to support the imposed restitution.

¶25 "In the construction of the statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Unlike the imposition of restitution under § 46-18-243(1)(a), MCA, § 46-18-243(1)(b), MCA, does not explicitly tether restitution for damaged property to an analogous civil tort standard. The question instead is what amount will fully reimburse the victim for the loss the defendant caused

them. This does not mean—as the Dissent suggests (Dissent, ¶ 44)—that a defendant who steals and then wrecks a person's vehicle must buy the victim a brand new vehicle. What it does mean is that the restitution award is not limited to fair market value but may be based on what the evidence shows it will cost to replace what the defendant damaged or destroyed, so that the victim is restored to the same position they were in before the defendant's actions. *Hill*, ¶ 14. The Legislature made this clear when it statutorily superseded our decision in *Pritchett*.

¶26 Here, the State presented evidence substantiating its claim that the full replacement cost of a dog-wash machine was $21,050, i.e. the cost of a new 2024 dog-wash machine. The Dissent speculates that "prices for a used 2017-2020 model machine are easily ascertainable on the Internet." Dissent, ¶ 45. There is no record basis for this speculation, as—just like the defendant in *Simpson*—Peterson offered no evidence to support her claim that the cost of repair was less than what All Paws advised Guetter or that a like-value replacement was available at a lower cost. *See Simpson*, ¶ 23. The District Court was entitled to accept Guetter's testimony as credible, and the record evidence was sufficient to support its determination.

¶27 Peterson did raise the defense that Guetter did not reasonably attempt to mitigate the damage incurred because he had not contacted a dog-wash machine repair technician, an electrician for the damaged electronics, and a welder for the warped door. "In the proceedings for the determination of the amount of restitution, the offender may assert any defense that the offender could raise in a civil action for the loss for which the victim seeks

14

compensation." Section 46-18-244, MCA. A victim may not recover damages for injuries that reasonably could have been avoided. *Kalal*, ¶ 9.

¶28 But an injured party's duty "to reduce or mitigate damages is limited." *Kalal*, ¶ 9 (citing *McPherson v. Kerr*, 195 Mont. 454, 459, 636 P.2d 852, 855 (1981) (quoting *Spackman*, 147 Mont. at 505, 414 P.2d at 921)). In determining whether a victim made reasonable efforts to mitigate damages, we consider what "an ordinary prudent person [would] be expected to do if capable, under the circumstances[.]" *Kalal*, ¶ 9; *accord Spackman*, 147 Mont. at 505, 414 P.2d at 921. A victim "is not expected to do what is unreasonable or impracticable." *Kalal*, ¶ 9 (citation omitted). In *Kalal*, we upheld a district court's conclusion that it is unreasonable to expect a victim "to spend money (or time) he does not have to mitigate an injury for which he is not responsible" when the offender suggested that the victim should have rented a trailer to procure a tractor to mitigate damages of lost income caused by the offender stealing the victim's tractor. *Kalal*, ¶ 10.

¶29 Guetter testified that he spent between thirty and forty hours attempting to repair the dog-wash machine, which continued to malfunction most of the time. His testimony described a pattern of ordering replacement parts, repairing and troubleshooting those parts, and the machine eventually becoming inoperable again. He replaced several switches, electronics, and the hinges and lock on the door. The door was still misshapen, did not shut correctly, and was susceptible to being pried open again. Guetter forwent replacing the cash acceptors, afraid that someone would be tempted to pry the door in its clearly compromised state. Guetter sought to acquire a replacement door and other parts from the manufacturer, which was unable to accommodate his request. Guetter attempted

15

to weld a new door like the original door, which involved fabricating storage for the machine's electronics. Based on this evidence, the District Court found that, despite Guetter going "above and beyond" to repair and mitigate the damages caused by Peterson and Taylor, the dog-wash machine continued to operate unreliably. The court concluded that Guetter's efforts to repair the machine were reasonable.

¶30 Peterson claims that Guetter did not call anyone to repair the dog-wash machine or to provide harder-to-find replacement parts. This is unsupported by the record. Guetter testified to speaking with the owner of All Paws. Peterson minimizes Guetter's contact with All Paws as insufficient to support the finding that the machine could not be repaired within reason or practicality. Nothing in the record indicates that All Paws did not provide Guetter with reliable and qualified advice. Again without record basis or evidence to the contrary, Peterson suggests that despite All Paws's recommendation, Guetter should have searched more diligently for replacement parts and a qualified dog-wash repair technician—one who presumably could service a machine in Glendive, Montana. Unfounded, Peterson also questions Guetter's knowledge and experience. Though Guetter had not specifically worked on a dog-wash machine, he testified to researching and working on similar machines his "whole life." Peterson emphasizes that Guetter acknowledged that it was possible, with enough manual labor and effort, to hammer the door to fit snugly into its original position and that he, alternatively, had not hired a professional welder to cut a new door.

¶31 Peterson suggests that, unlike Guetter, a reasonable, prudent person would have spent more time and more money repairing a machine for damages that he was not

responsible for creating. Peterson's proposition that Guetter should have exerted greater effort is unsupported by the record. Again, Peterson offered only speculation that such efforts would have been fruitful. Substantial evidence supports the District Court's finding that Guetter made reasonable efforts to mitigate the damage Taylor and Peterson caused to the dog-wash machine. A reasonable person might accept Guetter's testimony "as adequate to support a conclusion as to the replacement value for the [dog-wash machine]," and Peterson accordingly has not shown clear error in the District Court's findings. *See Hill*, ¶ 15.

¶32 Finally, Peterson contends that the court did not properly consider Peterson's ability to pay when imposing the restitution. Generally, a district court is not required to consider an offender's ability to pay when imposing restitution. *State v. Lodahl*, 2021 MT 156, ¶ 23, 404 Mont. 362, 491 P.3d 661; *see also* §§ 46-18-201(5), -244, -246, MCA. Statute permits the sentencing court to waive or adjust the restitution if the offender moves or petitions under § 46-18-246, MCA, and it finds that one of the four following conditions are met:

> (1) the circumstances upon which the court based the imposition of restitution no longer exist; (2) the amount of the victim's pecuniary loss no longer exists; (3) the method or time of payment no longer exists; or (4) that it otherwise would be unjust to require payment as imposed.

*State v. Erickson*, 2018 MT 9, ¶ 16, 390 Mont. 146, 408 P.3d 1288. Though we have previously held that an offender is not required to formally petition or move for an adjustment or waiver, it remains the offender's burden "to request and factually demonstrate his eligibility for relief." *Lodahl*, ¶¶ 25-26 (citing *Erickson*, ¶ 17).

¶33   When the District Court sentenced Peterson to pay restitution, it considered that Peterson was thirty-three years old and her health was "good." The court noted Peterson's employability and her $1,400 monthly income working thirty hours per week at a hotel prior to arrest. The court weighed Peterson's assets of $15,000 against her relative debt of $12,000. Peterson's presentence investigation report showed that she had a high school education and that she did not have physical custody of her only dependent. Peterson asserts that it would be unjust to order her to pay the full restitution given her income.

¶34   Peterson analogizes her case to *Lodahl*, arguing that in that case the defendant was able to waive restitution despite earning more than Peterson. Peterson, however, overlooks crucial details of that case. In *Lodahl*, the defendant suffered debilitating mental health problems and demonstrated a dire financial situation. *Lodahl*, ¶¶ 7, 27. She presented details of her expenses and income, showing that her expenses were greater than her earning power. *Lodahl*, ¶¶ 7, 27. She attempted to increase her work schedule from fifteen to twenty-three hours per week but suffered mental health decompensation when she did so. *Lodahl*, ¶¶ 7, 27. The defendant also was the single mother and caretaker of two young children. *Lodahl*, ¶¶ 7, 27. Despite this evidence, the district court concluded that Lodahl was able to pay, deeming the Internet, her car payment, and her son's phone as unnecessary expenses. *Lodahl*, ¶¶ 7, 27. We reversed, concluding that the imposition of restitution was unjust given the record. *Lodahl*, ¶ 30.

¶35   Here, in contrast, Peterson did not testify at the sentencing and restitution hearing. In the presentence investigation report, when prompted to give a recommendation on what the court should do with her case, she responded, "Not sure." Peterson bore the burden

and failed to develop the record to factually demonstrate that her inability to pay rendered the imposed restitution unjust.

**CONCLUSION**

¶36   The District Court complied with and correctly applied §§ 46-18-241 through -249, MCA, when it sentenced Peterson jointly and severally to pay restitution in the amount of $21,050 to Guetter.  The court's findings that the full replacement cost of the dog-wash machine was equivalent to the cost of a new 2024 dog-wash machine and that Guetter undertook reasonable efforts to mitigate his damages were supported by substantial evidence.  The District Court's findings were not clearly erroneous.  Peterson failed to meet her burden to show that the imposed restitution was unjust.  We affirm.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JIM RICE
/S/ MICHAEL F. McMAHON
District Court Judge Michael F. McMahon
sitting for Justice Katherine M. Bidegaray

Justice Ingrid Gustafson, dissenting.

¶37   The Court is upholding a restitution award in which the owner of an out-of-warranty 2017-model dog washing station, which had apparently been purchased new for approximately $17,000 in 2020 and used for 4 years before being damaged by Peterson's act of criminal mischief, is awarded $21,050 to buy a brand-new 2024 dog washing station

19

under the theory that a new machine is the "replacement cost" of the damaged machine. I believe the Court misreads the relevant restitution statutes and respectfully dissent.

¶38 On January 22, 2024, Peterson, along with co-defendant Robert Taylor, vandalized a dog washing station at the Get'er Clean Car Wash in Glendive. Relevant to this appeal, Peterson was charged with felony criminal mischief for damaging the dog washing station on February 23, 2024. In June of 2024, Peterson pled guilty to criminal mischief in the District Court, after she entered into a plea agreement with the State. The sentencing recommendation portion of that agreement called for Peterson to "pay all restitution to" the car wash. Prior to sentencing, Jeff Guetter, owner of the car wash, submitted an Affidavit of Victim's Pecuniary Loss, asserting a total pecuniary loss of $23,950. That total reflected the cost of purchasing a new dog washing station from All Paws Pet Wash, with a base cost of $21,050, along with $2,900 in add-ons.

¶39 At the originally-scheduled August 27, 2024 sentencing hearing, Peterson informed the District Court that she would be challenging the amount of restitution requested by Guetter because it was "substantially greater than what we had anticipated." The parties agreed to continue the hearing, and the District Court held a combined Restitution/Sentencing Hearing on October 1, 2024. At that hearing, Guetter testified regarding the damage to the dog washing station, his personal attempts to repair the damage and/or order replacement parts from All Paws, his decision to not submit a claim to his insurance, and his ultimate decision to "simply [get] the estimates for replacing another machine" because the machine was "bent up and damaged." Guetter testified that All Paws was unable to accommodate his attempts to find some replacement doors and parts and

20

informed him that "it would be cheaper for a new machine." Peterson argued that "the amount of a full replacement of a machine that's over four years older [with one] four years newer, is completely unsubstantiated" by the testimony at the restitution hearing. The District Court rejected Peterson's argument on this point, determined Guetter did attempt to mitigate his damages by attempting to repair the machine himself, and ordered Peterson to pay $21,050 in restitution for the base cost of the new dog washing station, finding the State did not plead the $2,900 in add-on costs with specificity.[1]

¶40 Under Montana law, a sentencing court is required to order "full restitution" to a victim who has suffered a "pecuniary loss." Section 46-18-201(5), MCA. "Restitution 'engrafts a civil remedy onto a criminal statute, creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender.'" *State v. Aragon*, 2014 MT 89, ¶ 16, 374 Mont. 391, 321 P.3d 841 (quoting *State v. Brownback*, 2010 MT 96, ¶ 19, 356 Mont. 190, 232 P.3d 385); *see also State v. Cole*, 2020 MT 259, ¶ 11, 401 Mont. 502, 474 P.3d 323 ("Section 46-18-243, MCA, in essence, engrafts a civil remedy into a criminal case."). "Restitution is not criminal punishment, but is a civil remedy administered by courts for the convenience of victims." *State v. McClelland*, 2015 MT 281, ¶ 10, 381 Mont. 164, 357 P.3d 906 (citing *State v. Field*, 2005 MT 181, ¶ 29, 328 Mont. 26, 116 P.3d 813). This Court has expressly held, in a case challenging a "replacement cost" award, that the "amount of restitution is based upon the special damages that a crime victim could recover in a civil action against the defendant based

---

[1] Peterson and Taylor were ordered to pay this amount jointly and severally. Taylor appealed his sentence as well, and the matter is pending before this Court in Cause No. DA 24-0715.

21

upon the same facts." *State v. Hill*, 2016 MT 219, ¶ 10, 384 Mont. 486, 380 P.3d 768. "The victim is entitled to restitution for 'the full replacement cost of property taken, destroyed, harmed or otherwise devalued as a result of the offender's criminal conduct.'" *Hill*, ¶ 10 (quoting § 46-18-243(1)(b), MCA). Restitution amounts must be supported by a preponderance of the evidence. *McClelland*, ¶ 10.

¶41 "The rules of evidence do not apply to a determination of restitution, but the defendant has a due process right to explain, argue and dispute any information presented on the issue." *Hill*, ¶ 10 (citing *McClelland*, ¶ 9). In addition to the due process right to explain or rebut any information presented, "the defendant may assert any defense to a request for restitution 'that the [defendant] could raise in a civil action for the loss for which the victim seeks compensation[.]'" *Aragon*, ¶ 16 (quoting § 46-18-244(2), MCA); *State v. Fenner*, 2014 MT 131, ¶ 8, 375 Mont. 131, 325 P.3d 691 (citing § 46-18-244(2), MCA) ("[A] defendant may assert the same defenses in opposition of restitution that the defendant could raise in a civil action for damages."). "A district court may award restitution even though the actual loss may be uncertain as long as the loss was derived by use of reasonable methods and the best evidence available under the circumstances. The district court may rely upon the victim's estimates of her loss to determine the level of restitution." *Hill*, ¶ 11 (internal citation omitted).

¶42 In this case, the Court is attempting to silo the phrase "full replacement cost" found in § 46-18-243(1)(b), MCA, from the language of § 46-18-243(1)(a), MCA, and § 46-18-244(2), MCA, which limit restitution recoveries to the amount which could be recovered in a civil action, and essentially determining that a crime victim is entitled to

funds to purchase a brand-new version of any "property taken, destroyed, harmed or otherwise devalued" by an offender's criminal conduct, regardless of whether the victim could recover that amount in a civil action. This reading is not supported by the text and is contradicted by this Court's precedents. "We interpret a statute first by looking to the statute's plain language, and if the language is clear and unambiguous, no further interpretation is required." *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. "We construe a statute by reading and interpreting the statute as a whole, 'without isolating specific terms from the context in which they are used by the Legislature.'" *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (quoting *City of Great Falls v. Morris*, 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692). "Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it." *Mont. Sports Shooting Ass'n*, ¶ 11.

¶43    The Court greatly overstates when it claims that imposition of restitution under § 46-18-243(1)(b), MCA, "does not explicitly tether restitution for damaged property to an analogous civil tort standard." Opinion, ¶ 25. Restitution being imposed under § 46-18-243(1)(b), MCA, rather than § 46-18-243(1)(a), MCA, does not sever that restitution award from our precedent limiting recoveries to what a victim could recover in a civil action against an offender. "We must harmonize statutes relating to the same subject, as much as possible, giving effect to each." *Mont. Sports Shooting Ass'n*, ¶ 11 (citing *Yellowstone Fed. Credit Union v. Daniels*, 2008 MT 111, ¶ 18, 342 Mont. 451, 181 P.3d 595). In every single case, a defendant may assert any defense to a request for restitution that they could raise in a civil action brought by the victim. *Aragon*, ¶ 16 (citing

23

§ 46-18-244(2), MCA). This is because the purpose of a sentencing court imposing restitution is to create "a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender." *State v. Jent*, 2013 MT 93, ¶ 12, 369 Mont. 468, 299 P.3d 332 (citing *Brownback*, ¶ 19). Restitution awards are to shortcut the process of forcing crime victims to sue in civil court, and therefore any restitution award is limited to what a crime victim could recover in a civil action. *Hill*, ¶ 10. Simply asserting awarding the "full replacement cost" as restitution means a crime victim can now recover more than they could in a civil action does not make it so. And though the Court correctly notes that it is unnecessary to further interpret a statute when its language is clear and unambiguous, Opinion, ¶ 13, it goes on to take an unnecessary detour into the legislative history of § 46-18-243(1)(b), MCA. Opinion, ¶ 15. That legislative history notes the intent for crime victims to be "fully reimbursed" for their loss. But reimbursement means paying back what was taken, it does not imply entitlement to more than that. *Reimbursement*, *Black's Law Dictionary* (12th ed. 2024) (defining "reimbursement" as the "act or an instance of paying back a sum of money"). In the same vein, I would also note that "replacement cost" is defined as the "cost of a substitute asset that is equivalent to an asset currently held." *Cost*, *Black's Law Dictionary* (12th ed. 2024). A new 2024-model dog washing station is not "equivalent" to a used 2017-model dog washing station. Guetter himself testified that his machine was several years old, was not brand new, had depreciated in value, and was purchased for several thousand dollars less than the $21,050 in restitution being upheld here. After noting all of those things, he testified that he simply gave the estimate to replace that machine with a new one. "A district court may award restitution even though the

24

actual loss may be uncertain as long as the loss was derived by use of reasonable methods and the best evidence available under the circumstances." *Hill*, ¶ 11 (citing *State v. O'Connor*, 2009 MT 222, ¶ 14, 351 Mont. 329, 212 P.3d 276). "Reasonable methods include 'a reasonably close estimate of the loss.'" *State v. Simpson*, 2014 MT 175, ¶ 14, 375 Mont. 393, 328 P.3d 1144 (quoting *State v. Dodson*, 2011 MT 302, ¶ 12, 363 Mont. 63, 265 P.3d 1254). Making one phone call to obtain the $21,050 estimate of a brand-new machine to replace one that is not brand new, which had depreciated in value, and was purchased for approximately $17,000 several years before is neither a reasonable method nor the best evidence available under the circumstances. *Hill*, ¶ 11. The Court continuously faults Peterson, who repeatedly argued the machine was able to be repaired and never needed to be replaced, for not obtaining a different replacement cost value. Opinion, ¶¶ 18, 20. But it is the State which has the "burden of proof as to the correct amount" of damages. *Aragon*, ¶ 14. Peterson has repeatedly argued "that the higher estimated cost was not reasonably necessary or sufficiently proven." *Aragon*, ¶ 15. And because Guetter's estimate is not supported by substantial evidence, we should remand to determine the correct amount of restitution to be imposed. *Aragon*, ¶ 21.

¶44 The Court's reading of "full replacement cost" as the cost to purchase a new version of a used item is also contradicted by our precedent interpreting restitution awards made under that statute. Take, for example, the 2016 case of *Hill*, in which we applied § 46-18-243(1)(b), MCA. In *Hill*, the defendant stole and wrecked a 1995 Pontiac Bonneville in 2014. The victim in that case put forth an affidavit asserting the "replacement value" of the car was $2,500, though its original 1995 sticker price was $20,804. *Hill*, ¶ 4.

The defendant challenged the replacement value asserted by the owner, and we determined "the issue here is not whether the car owner is entitled to restitution for her loss, but where that loss should be set between competing values." *Hill*, ¶ 12 (citing *Aragon*, ¶ 13). We noted the defendant's reliance on Kelley Blue Book values was insufficient to displace the victim's affidavit and reliance on the NADA Guide, which stated its values "should be 'considered as selling prices' to the retail consumer," which was "exactly the position that the owner here would be in if she were searching for a replacement vehicle." *Hill*, ¶ 14. Just like in the case before us, where All Paws no longer makes the 2020 (or, more accurately to the actual model damaged in this case, 2017) version of its dog washing station, Pontiac no longer made the 1995 Bonneville in 2014. *Cf. It's Always Sunny in Philadelphia: Mac & Charlie Die: Part 2* (FX television broadcast Oct. 2, 2008) ("Well now you're just talking crazy. You can't buy a new 1997 Dodge Neon. You can buy an old one, but you can't buy a new one."). Under the Court's reading of § 46-18-243(1)(b), MCA, today, the *Hill* Court inappropriately used the "market value" of a 1995 Pontiac Bonneville when it should have awarded the full "replacement cost" of a 2014 Pontiac Bonneville. Clearly, such an interpretation would lead to absurd results and must be avoided. *Mont. Sports Shooting Ass'n*, ¶ 11. The older an item "taken, destroyed, harmed or otherwise devalued," the greater the windfall would be when a sentencing court awards under the "replacement cost" subsection of the restitution statutes. But we have already explained, in *Hill*, that the "market value" of an item, in many cases, generally *is* its "replacement value" because that places the owner in "exactly the position" they would be when searching for a replacement. *Hill*, ¶ 14. Here, the Court is sanctioning a process

26

whereby the victim did not search for the cost of a "replacement" of his 2017-model dog washing machine, like the owner of the destroyed 1995 Pontiac Bonneville in *Hill*, but instead found out how much it would cost to "replace" that used machine with the new 2024 version. This process does not result in the "victim [being] restored to the same position they were in before the defendant's actions." Opinion, ¶ 25.[2] Such an award would not be upheld in a civil action if the victim sued Peterson, and it should not be here.

¶45 So where does that leave Peterson? Generally, a victim's affidavit or testimony may be sufficient, if credited by the court, to support a restitution award. *Aragon*, ¶ 14. But we have also rejected awards when the evidence before the court is insufficient to support the amount awarded. *Aragon*, ¶ 14 (collecting cases). Though Peterson focuses much of her

---

[2] Reading the Court's description of *Simpson*, one could get the impression that our award of the full replacement cost to repair the damaged road was in fact a windfall as it upgraded a dirt path into an improved gravel road. Opinion, ¶ 16. An important fact supporting the repair amount awarded in that case was that the contractor specifically testified that the "dirt path" was not actually a dirt path, but an access road which had already been improved by "truckloads of gravel" prior to Simpson wrecking the road and "[i]n order to repair that, you have to replace that to where it will stand back up." *Simpson*, ¶ 23. The present case does not involve the value to repair a damaged road, but the cost to replace a damaged machine. Simply searching for the cost of a brand-new machine to replace an older, out-of-warranty machine is not substantial evidence of the cost to replace the damaged machine in a way that results in Guetter being restored to the same position he was in before Peterson's actions. Just as in *Aragon*, where the parties agreed there was a causal connection between the victim and the offense and that the victim suffered a pecuniary loss, the "specific issue raised is whether the State met its burden of proof as to the correct amount of those damages." *Aragon*, ¶ 14. I would also note that a brief review of the sentencing transcript in *Simpson* shows this Court's statement that Simpson "did not introduce contrary evidence of what would constitute a reasonable amount of repair," *Simpson*, ¶ 23, is not correct, and is contradicted by our statement two sentences earlier where we recount that Simpson "testified as to his opinion that the amount of gravel in the estimate was unnecessary to improve the road." *Simpson*, ¶ 23. Simpson in fact argued that 100 yards of gravel, rather than 400 yards of gravel, was sufficient to repair the access road and that the $9,000 award should therefore be reduced by $3,000. Again, this has little relevance to the present situation as both the Court and the Dissent agree that Peterson's repair cost argument is misplaced and the true measure of damages is the replacement cost of the dog washing station, but we should be accurate about what actually occurred in *Simpson* if we choose to place such great reliance on the case.

briefing on arguing that Guetter's testimony was not sufficient to demonstrate the dog washing station could not be repaired, the District Court was in the best position to judge the credibility of the witness and the court credited Guetter's testimony based on his lifetime of working on machines. *Aragon*, ¶ 17. Simply arguing the machine could in fact be repaired without actually presenting evidence demonstrating that was the case is not sufficient to disturb the District Court's finding that Guetter was entitled to the full replacement cost of the machine. The District Court did commit legal error by awarding the full cost of a 2024 machine, however, because the "full replacement cost" of a used 2017 machine is not equivalent to a new 2024 machine. The amount awarded is also not supported by substantial evidence. Guetter testified to his attempts to repair the machine before calling All Paws, which recommended he get a new machine. Guetter only inquired with All Paws and only got a quote for their new 2024 model machine, though the prices for a used 2017-2020 model machine are easily ascertainable on the Internet. Guetter's pricing of the new model is not substantial evidence for what the replacement cost of the damaged machine actually is. "When an order for restitution is improperly entered upon legal error, we generally remand to the trial court for correct application of §§ 46-18-241 through -249, MCA." *Aragon*, ¶ 21 (collecting cases). When restitution is unsupported by substantial evidence, we similarly remand to determine the correct amount of restitution. *Aragon*, ¶ 21. I would remand to the District Court for a proper determination of restitution in this case as the $21,050 award to purchase a brand-new dog washing station is not supported by substantial evidence and is improperly entered upon legal error. On remand, Peterson would be able to reassert her arguments regarding her ability to pay the amount

of restitution ultimately awarded.[3]  Because the Court holds otherwise and sanctions a process where a victim is now entitled to a greater amount in damages than they could receive in a civil action by misinterpreting the phrase "replacement cost," I dissent.

/S/ INGRID GUSTAFSON

Justices Laurie McKinnon and James Jeremiah Shea join in the dissenting Opinion of Justice Ingrid Gustafson.

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

---

[3] The record reflects Peterson made $1,400 per month prior to her arrest and carried $12,000 in debt on a truck worth $15,000.  At $1,400 per month, Peterson's annual salary would be $16,800, which is only $840 above the federal poverty level.